The Honorable Ricardo S. Martinez

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JULIE ANNE KEMPF, on behalf of herself and
all others similarly situated,

                     Plaintiffs,

    v.

FULLBEAUTY BRANDS OPERATIONS,
LLC, an Indiana limited liability company,

                  Defendant.

NO. 2:25-cv-01141-RSM

**PLAINTIFF'S RESPONSE IN
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS THE FIRST
AMENDED COMPLAINT**

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(Case No. 2:25-cv-01141-RSM) - i

1

## **<u>TABLE OF CONTENTS</u>**

**I.    PRELIMINARY STATEMENT** .................................................................. 1

**II.    FACTUAL BACKGROUND** ................................................................. 3

**III.    ARGUMENT** ........................................................................................ 4

  A. Plaintiff's CEMA claim is not preempted by federal law. .......................... 4

    1. CEMA claims based on false or misleading email subject lines are not preempted under the CAN-SPAM Act.................................................... 4

    2. A CEMA claim does not require a showing of reliance and actual damages to survive preemption. ....................................................... 7

    3. Plaintiff need not plead the CEMA claim with particularity under Federal Rule of Civil Procedure 9(b). ...................................... 11

  B. CEMA is not unconstitutional under the dormant Commerce Clause...................... 12

    1. Defendant fails to meet the heavy burden of showing that CEMA is unconstitutional in all its applications. ................................. 12

    2. CEMA does not discriminate against out-of-state economic interests................. 13

    3. CEMA does not impermissibly regulate or control interstate commerce. ........... 14

    4. CEMA is constitutional under the *Pike* balancing test. ....................... 18

    5. CEMA falls within a zone of state authority preserved by Congress and is invulnerable to dormant Commerce Clause attack............................. 20

  C. Plaintiff sufficiently alleges that FullBeauty knew or had reason to know Plaintiff was a Washington resident. ....................................... 21

  D. Plaintiff sufficiently alleges that FullBeauty's extended sales were predetermined. 24

  E. Plaintiff states a claim under the CPA. ................................................ 25

**IV.    CONCLUSION** .................................................................................... 26

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(Case No. 2:25-cv-01141-RSM) - ii

Tousley Brain Stephens PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3    **Cases**

4    *Aaland v. CRST Home Sols., LLC,*
       2025 WL 2641255 (Wash. Ct. App. Sept. 15, 2025) ..........................................................11

5

6    *Am. Apparel & Footwear Ass'n, Inc. v. Baden,*
       107 F.4th 934 (9th Cir. 2024)...........................................................................................4

7

8    *Am. Librs. Ass'n v. Pataki,*
       969 F. Supp. 160 (S.D.N.Y. 1997) ...............................................................................16, 17

9    *Asis Internet Servs. v. Consumerbargaingiveaways, LLC,*
       622 F. Supp. 2d 935 (N.D. Cal. 2009)................................................................................8

10

11   *Asis Internet Servs. v. Member Source Media, LLC,*
       2010 WL 1610066 (N.D. Cal. Apr. 20, 2010)....................................................................9

12

13   *Asis Internet Servs. v. Subscriberbase, Inc.,*
       2010 WL 1267763 (N.D. Cal. Apr. 1, 2010)................................................................8, 10

14   *Ass'n des Éleveurs de Canards et d'Oies du Québec v. Harris,*
       729 F.3d 937 (9th Cir. 2013) ..........................................................................................13

15

16   *Beagle v. Amazon.com, Inc.,*
       2024 WL 4028290 (W.D. Wash. Sep. 3, 2024) ...............................................................24

17

18   *Beyond Sys. v. Kraft Foods, Inc.,*
       777 F.3d 712 (4th Cir. 2015)........................................................................................4, 9

19   *Black Star Farms LLC v. Oliver,*
       600 F.3d 1225 (9th Cir. 2010) ........................................................................................13

20

21   *Booth v. Appstack, Inc.,*
       2015 WL 1466247 (W.D. Wash. 2015) ......................................................................16, 17

22   *Brown v. Old Navy, LLC,*
       567 P.3d 38 (Wash. 2025) ........................................................................................1, 6, 7

23

24   *Daniels Sharpsmart, Inc. v. Smith,*
       889 F.3d 608 (9th Cir. 2018)......................................................................................16, 17

25

26   *Davison Design & Dev., Inc. v. Riley,*
       2012 WL 4051189 (N.D. Cal. Sep. 13, 2012).................................................................10

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(Case No. 2:25-cv-01141-RSM) - iii

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

*Davison Design & Dev. Inc. v. Riley*,
   2013 WL 1222691 (N.D. Cal. 2013) ..................................................................10

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014) ...........................................................................25

*Flynt v. Bonta*,
   131 F.4th 918 (9th Cir. 2025) ................................................................. *passim*

*Gordon v. Impulse Mktg. Grp., Inc.*,
   375 F. Supp. 2d 1040 (E.D. Wash. 2005)...........................................................11

*Gordon v. Virtumundo, Inc.*,
   2007 WL 1459395 (W.D. Wash. 2007) ................................................................6

*Gordon v. Virtumundo, Inc.*,
   575 F.3d 1040 (9th Cir. 2009) ................................................................. *passim*

*Gragg v. Orange Cab Co.*,
   145 F. Supp. 3d 1046 (W.D. Wash. 2015) ..........................................................26

*Gutierrez v. Converse Inc.*,
   2024 WL 2106952 (C.D. Cal. 2024) ..................................................................23

*Hartman v. United Bank Card, Inc.*,
   291 F.R.D. 591 (W.D. Wash. 2013) ..............................................................16, 17

*Healy v. Beer Institute*,
   491 U.S. 324 (1989) ...........................................................................15, 16, 17

*Hoang v. Reunion.com, Inc.*,
   2010 WL 1340535 (N.D. Cal. Mar. 31, 2010) ...................................................6, 9

*Lee v. City of L.A.*,
   250 F.3d 668 (9th Cir. 2001) ...........................................................................25

*Lewis v. BT Inv. Managers*,
   447 U.S. 27 (1980) .........................................................................................19

*Malibu Media, LLC v. Doe*,
   2014 WL 2615351 (S.D. Fla. 2014) ...................................................................23

*Malibu Media, LLC v. John Does*,
   2012 WL 2921227 (S.D. Cal. July 17, 2012) ......................................................23

*MaryCLE, LLC v. First Choice Internet, Inc.*,
   890 A.2d 818 (Md. Ct. Spec. App. 2006)...............................................1, 17, 18

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(Case No. 2:25-cv-01141-RSM) - iv

*Metrophones Telecomms., Inc. v. Glob. Crossing Telecomms., Inc.*,
  423 F.3d 1056 (9th Cir. 2005) .................................................................4

*Nat'l Fed'n of the Blind v. Target Corp.*,
  452 F. Supp. 2d 946 (N.D. Cal. 2006) .................................................18

*National Pork Producers Council v. Ross*,
  598 U.S. 356 (2023) ...................................................................... *passim*

*Ne. Bancorp, Inc. v. Bd. of Governors*,
  472 U.S. 159 (1985) .............................................................................21

*Omega World Travel, Inc. v. Mummagraphics, Inc.*,
  469 F.3d 348 (4th Cir. 2006) ................................................................9

*Pike v. Bruce Church*,
  397 U.S. 137 (1970) ....................................................................... *passim*

*Publius v. Boyer-Vine*,
  237 F. Supp. 3d 997 (E.D. Cal. 2017) ...........................................16, 17

*Ramirez v. MGM Mirage, Inc.*,
  524 F. Supp. 2d 1226 (D. Nev. 2007) .................................................21

*Riegels v. Comm'r (In re Estate of Saunders)*,
  745 F.3d 953 (9th Cir. 2014) ...............................................................21

*S.D. Myers, Inc. v. City & Cnty. of San Francisco*,
  253 F.3d 461 (9th Cir. 2001) ...............................................................13

*Sam Francis Found. v. Christies, Inc.*,
  784 F.3d 1320 (9th Cir. 2015) .........................................................16, 17

*South-Central Timber Dev., Inc. v. Wunnicke*,
  467 U.S. 82 (1984) ...............................................................................21

*Starr v. Baca*,
  652 F.3d 1202 (9th Cir. 2011) .............................................................25

*State v. Heckel*,
  24 P.3d 404 (Wash. 2001) .................................................14, 17, 18, 20

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) ...............................................................12

*In re Toys "R" Us - Del., Inc. FACTA Litig.*,
  300 F.R.D. 347 (C.D. Cal. 2013) .........................................................21

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(Case No. 2:25-cv-01141-RSM) - v

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

*United States v. Salerno*,
    481 U.S. 739 (1987) ................................................................................12, 18

*Von Gohren v. Pac. Nat'l Bank*,
    505 P.2d 467 (Wash. Ct. App. 1973) ...........................................................22, 24

*Wagner v. Spire Vision*,
    2014 WL 889483 (N.D. Cal. Mar. 3, 2014) ............................................................7

*Wakefield v. ViSalus, Inc.*,
    51 F.4th 1109 (9th Cir. 2022)..........................................................................21

*Ward v. United Airlines*,
    986 F.3d 1234 (9th Cir. 2021)....................................................................13, 14

*Wash. State Grange v. Wash. State Republican Party*,
    552 U.S. 442 (2008) ...............................................................................12, 13

*Young v. Toyota Motor Sales, U.S.A.*,
    472 P.3d 990 (Wash. 2020) .............................................................................10

**Statutes**

California Resale Royalty Act ...............................................................................16

Controlling the Assault of Non-Solicited Pornography and Marketing Act
    ("CAN-SPAM") ............................................................................... *passim*

Consumer Protection Act ("CPA") ..............................................................2, 10, 25, 26

Washington Commercial Electronic Mail Act ("CEMA") ..................................... *passim*

**Other Authorities**

Federal Rule of Civil Procedure 9(b) .....................................................................4, 11, 12

Jack L. Goldsmith & Alan O. Sykes, *The Internet and the Dormant Commerce
    Clause*, 110 Yale L.J. 785, 795 (2001)..................................................................20

Federal Rule of Civil Procedure 8 .........................................................................11

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## I.    PRELIMINARY STATEMENT

The Court should deny Defendant FullBeauty Brands Operations, LLC's ("FullBeauty") motion to dismiss the First Amended Complaint ("FAC") in its entirety for the following reasons:

**First**, Plaintiff's claims are not preempted by the Controlling the Assault of Non-Solicited Pornography and Marketing Act ("CAN-SPAM"). Congress expressly preserved state authority where a law "prohibits falsity or deception in any portion of a commercial electronic mail message." 15 U.S.C. § 7707(b)(1). The Washington Commercial Electronic Mail Act ("CEMA") provision at issue is a paradigmatic example: it prohibits sending a commercial email with a "false or misleading" subject line. Wash. Rev. Code § 19.190.020(1)(b). That straightforward statutory construction ends the preemption inquiry. Ignoring this plain language, FullBeauty leans on *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040 (9th Cir. 2009). But *Virtumundo* recognized that it is for Washington state courts to define the scope of CEMA, and the Ninth Circuit expressly noted that a narrowing construction by those courts could preserve the statute against preemption. That is precisely what the Washington Supreme Court did in *Brown v. Old Navy, LLC*, 567 P.3d 38 (Wash. 2025), holding that a retailer violates CEMA when it uses subject lines containing false or misleading "representations of fact" that "Washington residents would depend on in making their consumer decisions." *Id.* at 47. Moreover, district courts routinely interpret *Virtumundo* as not requiring the pleading of reliance or actual damages for a state anti-spam law claim to survive preemption.

**Second**, CEMA is a valid exercise of Washington's police power and is not unconstitutional under the dormant Commerce Clause. It applies evenhandedly, safeguards important local interests, and produces substantial benefits that far outweigh any incidental effects on interstate commerce. FullBeauty's contrary argument rests on a theory of extraterritoriality the Supreme Court rejected in *National Pork Producers Council v. Ross*, 598 U.S. 356 (2023). Ignoring that precedent, FullBeauty invokes a line of outdated

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

extraterritoriality cases that *National Pork* expressly curtailed. Defendant's *Pike* argument fares no better. The supposed burden on commerce—simply refraining from deceptive subject lines—is minimal, mirrors the obligations imposed by CAN-SPAM, and is trivial when weighed against the state's compelling interest in preventing consumer deception. Properly understood, CEMA is a neutral statute targeting deceptive email marketing practices. Any incidental impact on out-of-state senders is constitutionally permissible. In any event, Congress expressly preserved state authority to regulate in this area, foreclosing dormant Commerce Clause scrutiny altogether.

*Third*, Plaintiff adequately alleges that FullBeauty *knew or had reason to know* she is a Washington resident. The sender's knowledge is established when the recipient's residency information "is available, upon request, from the registrant of the internet domain name contained in the recipient's electronic mail address." Wash. Rev. Code § 19.190.020(2). FullBeauty concedes it did not attempt to request Plaintiff's residency information; that failure alone satisfies knowledge. In addition, FullBeauty's own Privacy Policy confirms that it collects IP addresses and location data from website visitors. FAC ¶¶ 53–54. At a minimum, whether such data gave FullBeauty "reason to know" of Plaintiff's residency is a factual question that cannot be decided on the pleadings and must await fact and expert discovery.

*Fourth*, the FAC adequately alleges that FullBeauty's purported "extensions" of limited-time promotions were predetermined, making subject lines touting expiration dates false or misleading. FAC ¶ 19. FullBeauty argues these allegations are insufficient because sales might have been extended on an ad hoc basis for business reasons. But FullBeauty's alternative narrative, even if conceivable, does not undercut the plausibility of Plaintiff's allegations. To the contrary, the FAC pleads facts that affirmatively undermine FullBeauty's explanation and support the inference that the extensions were predetermined.

*Fifth*, Plaintiff states a claim under the Consumer Protection Act ("CPA") because a violation of CEMA is a per se violation of the CPA. Wash. Rev. Code § 19.190.030(3). Having adequately alleged a CEMA violation, Plaintiff has necessarily stated a CPA claim as well.

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(Case No. 2:25-cv-01141-RSM) - 2

## II.    FACTUAL BACKGROUND

Plaintiff alleges that FullBeauty repeatedly violated CEMA by sending her commercial emails with false and misleading information in the subject lines. FullBeauty "uses a variety of tricks and deceptive language to influence consumer behavior." Doc. 22 ("FAC") ¶ 2. These subject lines can be broken into at least four categories:

> (a) subject lines that describe a specific, limited-time promotion that is not, in fact, limited to the timeframe described in the subject line; (b) subject lines that trick the recipient into opening the email by misleadingly characterizing the nature of the email or disguising its true commercial purpose; (c) subject lines stating without qualification that a particular promotion is available for products "sitewide" when that is not the case; and (d) subject lines stating that products are being offered at a specific and significant percentage discount when, in reality, the reference prices used to calculate the percentage discount are illusory.

*Id.* ¶ 12. Each one "conveys an objective statement of fact that is provably false or misleading and that Washington residents would depend on in making their consumer decisions." *Id.* ¶ 13.

FullBeauty's use of deceptive subject lines was systematic, with Plaintiff herself receiving dozens of such emails during the class period. *See id.* ¶¶ 21, 27, 31, 35, 40. The subject lines included urgent but false expiration dates such as "LAST DAY to Save 60%," fabricated "Order Confirmations," sweeping promises like "50% Off Sitewide" that excluded major categories of products, and purported percentage discounts calculated from inflated or fictitious reference prices. *Id.* ¶¶ 20, 28, 36–37, 41–42. These tactics were designed to prey on consumer trust, induce recipients to open emails under false pretenses, and pressure them into making purchases sooner or in greater amounts than they otherwise would. *Id.* ¶¶ 2–3, 12–13, 44–45.

FullBeauty initiated the transmission of these emails to consumers, including Plaintiff, whom it knows or has reason to know resides in Washington. *Id.* ¶¶ 46–63. In addition, FullBeauty's subject lines touting purported "extensions" of limited-time promotions are deceptive because the company "determines in advance how long it will offer a given promotion, such that it knows when it represents the limited duration of the promotion that the description is untruthful." *Id.* ¶ 18.

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(Case No. 2:25-cv-01141-RSM) - 3

1

2

### III.    ARGUMENT

**A.    Plaintiff's CEMA claim is not preempted by federal law.**

CAN-SPAM does not preempt CEMA's subject line provision. As recently interpreted by the Washington Supreme Court, the provision is a valid exercise of state law, and Plaintiff need not allege reliance or actual damages, nor must Plaintiff plead with particularity under Federal Rule of Civil Procedure 9(b). The plain language of CAN-SPAM's savings clause, its legislative history, and the weight of authority compel that conclusion.

### 1.    CEMA claims based on false or misleading email subject lines are not preempted under the CAN-SPAM Act.

"Express preemption is a question of statutory construction, requiring a court to look to the plain wording of the statute and surrounding statutory framework to determine whether Congress intended to preempt state law." *Am. Apparel & Footwear Ass'n, Inc. v. Baden*, 107 F.4th 934, 939 (9th Cir. 2024). "Of course, congressional purpose is the ultimate touchstone in every pre-emption case, and the plain wording of the express preemption clause necessarily contains the best evidence of Congress' preemptive intent." *Id.* (cleaned up). "The presence of an express preemption provision supports an inference that Congress did not intend to preempt matters *beyond* the reach of that provision." *Metrophones Telecomms., Inc. v. Glob. Crossing Telecomms., Inc.*, 423 F.3d 1056, 1072-73 (9th Cir. 2005).

CAN-SPAM expressly preempts some state statutes and regulations while saving others:

> This chapter supersedes any statute, regulation, or rule of a State or political subdivision of a State that expressly regulates the use of electronic mail to send commercial messages, *except to the extent that any such statute, regulation, or rule prohibits falsity or deception in any portion of a commercial electronic mail message or information attached thereto.*

15 U.S.C. § 7707(b)(1) (emphasis added). As relevant here, CEMA regulates commercial electronic mail messages sent to Washington residents that "contain false or misleading information in the subject line." Wash. Rev. Code § 19.190.020(1)(b).

The CEMA provision at issue is saved from preemption based on CAN-SPAM's plain

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(Case No. 2:25-cv-01141-RSM) - 4

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1  language alone. CEMA's subject line provision does just what Congress said states could do: it

2  creates liability for transmitting commercial emails that "contain false or misleading

3  information" in the subject line. FullBeauty acknowledges that Congress expressly "carved out

4  state laws that prohibit 'falsity or deception'" from CAN-SPAM's preemptive scope, Mot. at 5,

5  but it ignores the clear nexus between the savings clause and CEMA.

6      Instead, FullBeauty erroneously relies on dicta from a Ninth Circuit case concerning the

7  application of the preemption clause to an entirely different provision of CEMA. In *Gordon v.*

8  *Virtumundo, Inc.*, the Ninth Circuit held that CAN-SPAM preempted claims brought under a

9  separate provision of CEMA prohibiting commercial emails containing header information that

10  misrepresents or obscures the sender's identity. 575 F.3d at 1059 (citing Wash. Rev. Code §

11  19.190.020(1)(a) (CEMA's "header provision")). The court explained that the alleged

12  deficiencies related to, "at most, non-deceptive statements or omissions," amounting to an

13  attempt to impose "a heightened content or labeling requirement" for commercial emails. *Id.* at

14  1064. As FullBeauty emphasizes, the court opined that CAN-SPAM's savings clause "refers to

15  'traditionally tortious or wrongful conduct.'" *Id.* at 1062 (quoting *Omega World Travel, Inc. v.*

16  *Mummagraphics, Inc.*, 469 F.3d 348, 354 (4th Cir. 2006)). Because the plaintiff alleged only

17  "technical" and "non-deceptive statements or omissions" in email headers, the court held that

18  the allegations had "no basis in traditional tort theories and therefore fall beyond the ambit of

19  the exception language in the CAN-SPAM Act's express preemption clause." *Id.* at 1064.

20      *Virtumundo* does not help FullBeauty. First, the Ninth Circuit reviewed CAN-SPAM's

21  legislative history and noted that "a State law requiring some or all commercial e-mail to carry

22  specific types of labels, or to follow a certain format or contain specified content, would be

23  preempted" while "a State law prohibiting fraudulent or deceptive headers, subject lines, or

24  content in commercial e-mail would not be preempted." *Id.* at 1062 (quoting S. Rep. No. 108–

25  102 at 21) (brackets omitted). The CEMA provision held to be preempted in *Virtumundo* fell

26  into the first category; the one at issue here falls into the second. Also, in affirming the district

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(Case No. 2:25-cv-01141-RSM) - 5

court, the Ninth Circuit did not cast doubt on the district court's statement that "CEMA claims that allege 'false or deceptive' e-mail headers would fit into Congress's savings clause." *Gordon v. Virtumundo, Inc.*, 2007 WL 1459395, at *12 (W.D. Wash. 2007), *aff'd*, 575 F.3d 1040 (9th Cir. 2009); *see also Hoang v. Reunion.com, Inc.*, 2010 WL 1340535, at *6 n.5 (N.D. Cal. Mar. 31, 2010) (observing that the Ninth Circuit did not "indicate any disagreement with the district court's statement that some claims under [CEMA] are not preempted" (cleaned up)). Thus, *Virtumundo* provides a framework for analyzing the scope of preemption, but its holding has no bearing on this case.

   *Virtumundo* is also instructive in its approach to the construction of state law. The court explained that Washington state courts have the prerogative to "limit the broad language of CEMA" in ways that affect preemption analysis. *Virtumundo*, 575 F.3d at 1059. The court cited a Washington Court of Appeals case construing the CEMA header provision as broadly regulating "a vast array of non-deceptive acts and practices." *Id.* (citing *Benson v. Or. Processing Serv., Inc.*, 150 P.3d 154, 156 (Wash. Ct. App. 2007)). That construction took the header provision outside of the savings clause. But the court explained that should Washington courts at some point interpret the CEMA header provision to "extend only to acts of deception," the law would survive preemption. *Id.* ("The Washington Legislature or state courts may ultimately mold CEMA's broad language so as to cabin its breadth or interpret the law in conformity with federal legislation.").

   A recent case regarding the scope of CEMA's *subject line* provision delivers the type of clarification the Ninth Circuit invited. In *Brown v. Old Navy, LLC*, the Washington Supreme Court held that the subject line provision prohibits false or misleading "representations of fact" in subject lines, such as statements about "the duration or availability of a promotion, its terms and nature, the cost of goods, and other *facts Washington residents would depend on* in making their consumer decisions." 567 P.3d 38, 47 (Wash. 2025) (emphasis added). Adding further gloss, the court explained that the statute does *not* prohibit "mere puffery" such as "subjective

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(Case No. 2:25-cv-01141-RSM) - 6

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

statements, opinions, and hyperbole." *Id.* In this controlling interpretation of state law, the court superimposed an objective materiality test on the statute, thus saving it from preemption.[1]

After *Brown*, there is no question that CEMA's subject line provision does not prohibit "immaterial inaccuracies or omissions" or other "non-deceptive acts and practices," unlike the header provision at issue in *Virtumundo*. The final arbiter of Washington law "mold[ed] CEMA's broad language so as to cabin its breadth" and "interpret[ed] the law in conformity with federal legislation." *Virtumundo*, 575 F.3d at 1059. For this reason, the law falls squarely within CAN-SPAM's savings clause and is not preempted.

### 2.    A CEMA claim does not require a showing of reliance and actual damages to survive preemption.

FullBeauty correctly recognizes that a state anti-spam claim "must be based on more than 'immaterial inaccuracies or omissions'" to survive preemption. Mot. at 6 (quoting *Virtumundo*, 575 F.3d at 1062). And post *Brown*, that will always be the case for a well-pled claim under CEMA's subject line provision. But FullBeauty goes a step too far when it claims a CEMA plaintiff must allege all elements of common law fraud or at least "the essential elements of a tort claim," which it says include reliance and actual damages. Mot. at 11. That does not follow from *Virtumundo*, which is why "[t]he great weight of district court and state court decisions have agreed that a showing of reliance and damages is not necessary" for a state anti-spam claim to survive preemption. *Wagner v. Spire Vision*, 2014 WL 889483, at *3 (N.D.

---

[1] *Brown* addressed a specific certified question: "whether [CEMA] prohibits *any* false or misleading information in subject lines or only false or misleading information about the commercial nature of the message." *Brown*, 567 P.3d at 41. As the court noted, a federal court previously construed this statute to reach only "false and misleading information *as to the nature of the email*, i.e. that the email is an advertisement." *Id.* at 42 (quoting *Weimin Chen v. Sur La Table, Inc.*, 655 F. Supp. 3d 1082, 1092 (W.D. Wash. 2023)). *Brown* rejected that narrow approach, holding that CEMA "prohibits sending Washington residents commercial e-mails that contain *any* false or misleading information in the subject lines of such e-mails." *Id.* at 47. But the court's emphasis of the word "any" must be read in the context of the certified question; it does not mean the statute reaches immaterial inaccuracies, which is clear from the explanation that CEMA does not prohibit mere puffery in subject lines and only covers "representations of fact" that "Washington residents would depend on in making their consumer decisions." *Id.* Moreover, *Brown* does not suggest that subject lines containing false or misleading information about the commercial nature of a message are not also actionable. *See* FAC ¶¶ 25-27 (alleging Defendant uses email subject lines that "are false or misleading as to the commercial nature of the email").

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1    Cal. Mar. 3, 2014) (collecting cases).

2         These courts begin with the text and structure of CAN-SPAM's savings clause. In one

3    case addressing California's analogous subject line provision, the court explained that the

4         defendants interpret the savings clause too narrowly: 'falsity or deception'
             is not limited just to common-law fraud and other similar torts. Statutory
5         interpretation begins with the text of the statute. On its own terms, the
             savings clause exempts from preemption not only 'fraud' claims but rather
6         laws that proscribe 'falsity *or* deception' in email advertisements. The Act
             does not define the words 'falsity' and 'deception.' Congress, however, is
7         certainly familiar with the word 'fraud' and choose [*sic*] not to use it; the
             words 'falsity or deception' suggest broader application. In fact, as
8         plaintiffs emphasize, Congress utilized the word 'fraud' in the very next
             subsection but not in the savings clause.
9

10   *Asis Internet Servs. v. Consumerbargaingiveaways, LLC*, 622 F. Supp. 2d 935, 942 (N.D. Cal.

11   2009) (citing 15 U.S.C. 7707(b)(2)) (emphasis in original). The court declined to "confine the

12   phrase 'falsity or deception' to strict common-law fraud such that anti-deception state actions

13   not insisting on every element of common-law fraud are preempted." *Id.* at 944. After all,

14   *Virtumundo* and CAN-SPAM's savings clause "refer disjunctively" to falsity *or* deception. *Asis*

15   *Internet Servs. v. Subscriberbase, Inc.*, 2010 WL 1267763, at *11, (N.D. Cal. Apr. 1, 2010)

16   (quoting 15 U.S.C. § 7707(b)(1)). "The term 'deception' would be redundant (if not misleading)

17   if Congress meant to limit state regulation solely to common law fraud." *Id.* "This language

18   supports a broad reading of the exemption within the savings clause, which [courts are] obliged

19   to credit because 'express preemption statutory provisions should be given narrow

20   interpretation.'" *Id.* (quoting *Virtumundo*, 575 F.3d at 1060).

21        Moreover, nothing in CAN-SPAM's legislative history suggests Congress intended to

22   limit state regulation of commercial email solely to fraud-type claims. "Congress explicitly

23   crafted the savings clause so that preemption would turn on whether a state [statute] targets the

24   behavior of advertisers," which "suggests that states may regulate deceptive behavior without

25   consideration of conditions that do not turn on the behavior of advertisers," such as whether a

26   plaintiff relied to her detriment on a false or deceptive statement in an email. *Subscriberbase*,

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(Case No. 2:25-cv-01141-RSM) - 8

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

2010 WL 1267763, at *12 ("[A]dding the traditional fraud elements of reliance and damages does not add anything to Congress's efforts to create a uniform system of regulation governing email advertisements. . . . This is because the elements of reliance and damages do not speak to the substance of the emails or subject lines that are prohibited."); *see also Asis Internet Servs. v. Member Source Media, LLC*, 2010 WL 1610066 (N.D. Cal. Apr. 20, 2010) (holding that plaintiff "need not plead reliance and damages in order for its [California anti-spam law] claim to be excepted from preemption"); *Hoang v. Reunion.com, Inc.*, 2010 WL 1340535, at *4 (N.D. Cal. Mar. 31, 2010) (legislative history discussed in *Virtumundo* suggests that "a plaintiff alleging the receipt of a commercial e-mail containing a materially false or misleading statement" need not allege reliance on that statement to avoid preemption).

FullBeauty's cases are distinguishable. First, in *Omega*, the Fourth Circuit simply "concluded that Congress could not have intended, by way of the carve-out language, to allow states to enact laws that prohibit 'mere error' or 'insignificant inaccuracies.'" *Virtumundo*, 575 F.3d at 1061 (quoting *Omega,* 469 F.3d at 354–55). The Fourth Circuit later clarified that "a state's anti-spam statute is not preempted so long as it deals with falsity or deception *in the vein of tort*." *Beyond Sys. v. Kraft Foods, Inc.*, 777 F.3d 712, 717 (4th Cir. 2015) (emphasis added). The court's analysis of state court decisions interpreting anti-spam statutes makes clear that those claims need not rise to the level of common law fraud or require the same elements as any particular common law tort to survive preemption.[2] *See id.* And *Kleffman v. Vonage Holdings Corp.*, a pre-*Virtumundo* decision, is inapposite because the claims in that case involved the defendant's use of different domain names in the sender field that the plaintiff conceded "literally and truthfully" identified the defendant as the sender. 2007 WL 1518650, at *2 (C.D.

---

[2] In *Beyond Systems*, the court analyzed controlling state court interpretations of the Maryland and California anti-spam laws in concluding that those states' laws are not preempted by CAN-SPAM. *Beyond*, 777 F.3d at 717. As to California law, the court cited *Hypertouch Inc. v. Valueclick, Inc.*, where the California Court of Appeal stated that California's anti-spam law "dispenses with many of the elements associated with common law fraud." 192 Cal. App. 4th 805, 820 (2011). If FullBeauty were correct that a state anti-spam law must require allegations of reliance and actual damages to survive preemption, then *Beyond Systems* would have come out the other way, with California's statute preempted.

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(Case No. 2:25-cv-01141-RSM) - 9

1    Cal. May 22, 2007) ("The failure to send mail from a single domain name that includes the word

2    'Vonage' is simply not a misrepresentation in any ordinary sense of the word."). Unlike in this

3    case, the plaintiff in *Kleffman* did not allege that the emails contained affirmatively false or

4    misleading statements of fact, but rather than the defendant failed to include its name in the

5    email sender field. *Id.* Far from alleging material falsity or deception, the plaintiff's "innovative

6    theories" about the sender field were an attempt to impose the type of state-level "content or

7    labeling requirement" shot down in *Virtumundo*.[3]

8        FullBeauty is also incorrect as a matter of law that Plaintiff must show the subject lines

9    at issue "were material *to her* or any action she took." Mot. at 6–7 (emphasis added). This

10   attempt to graft a "personal materiality" requirement onto the law is simply a recharacterization

11   of the reliance argument and fails for the same reasons. Like its California counterpart, CEMA

12   liability turns on whether the commercial e-mail contains information that is objectively false

13   or misleading, not on whether the recipient was personally deceived or acted in reliance. *See*

14   *Subscriberbase*, 2010 WL 1267763, at *12 (California anti-spam claim need not be brought by

15   a plaintiff that "had actually been duped by a misleading subject line" because a claim may be

16   premised on "emails that attempt to deceive"). Washington courts construing the CPA

17   consistently apply an objective "capacity to deceive" standard. *Young v. Toyota Motor Sales,*

18   *U.S.A.*, 472 P.3d 990, 994 (Wash. 2020); *see also Virtumundo*, 575 F.3d at 1066 (stating that

19   CPA claims must be "predicated on unfair or deceptive conduct that has 'the capacity to deceive

20   a substantial portion of the public'" (quoting *Hangman Ridge Training Stables, Inc. v. Safeco*

21   *Title Ins. Co.*, 719 P.2d 531, 535 (Wash. 1986))). The same reasoning applies to CEMA, which

22   likewise targets subject lines that are false or misleading on their face, not those that happen to

23   dupe a given recipient.

24

25   ─────────────
     [3] FullBeauty cites a single outlier case applying *Virtumundo* to require pleading of reliance and damages. *Davison*
26   *Design & Dev. Inc. v. Riley*, 2013 WL 1222691 (N.D. Cal. 2013). The summary order in *Davison* did not examine
     the scope of CAN-SPAM preemption beyond the conclusory statement that the plaintiff's claims did not "sound in
     tort." *Davison Design & Dev., Inc. v. Riley*, 2012 WL 4051189, at *1 (N.D. Cal. Sep. 13, 2012).

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(Case No. 2:25-cv-01141-RSM) - 10

Because CEMA violations are actionable through the CPA, the proper standard is whether the challenged subject line had the capacity to deceive a substantial portion of the public; Plaintiff need not show any particular email was "material *to her*." Mot. at 7. Moreover, if CEMA liability turned on whether each plaintiff could prove the subject line was material to them personally, it would gut the law's deterrence purpose and make the statute unenforceable in practice. *Cf. Aaland v. CRST Home Sols., LLC*, 2025 WL 2641255, at *3 (Wash. Ct. App. Sept. 15, 2025) ("[A]s a consumer protection statute, [Washington courts] construe CEMA liberally in favor of the consumers it aims to protect.").[4]

Finally, FullBeauty mischaracterizes Plaintiff's allegations about subject lines that mislead consumers into believing a discount applies "sitewide" when it does not. Mot. at 7–8. Plaintiff does not allege that these subject lines "omitted information that is clarified in the email," as was true in the cases FullBeauty cites. *See id.* (citing FAC ¶¶ 28–35). Rather, Plaintiff alleges that the subject lines *affirmatively* "trick the consumer into thinking that the promotion will apply to any product available" on the sites when, in reality, the promotions are more limited. FAC ¶ 28. This is no more an "omission" than claiming "all sweaters are on sale" when only a handful of styles are discounted.

### 3.    Plaintiff need not plead the CEMA claim with particularity under Federal Rule of Civil Procedure 9(b).

FullBeauty also argues that Plaintiff should be held to the particularity requirement of Federal Rule of Civil Procedure 9(b). But CEMA claims "do not trigger the heightened pleading requirements of Rule 9(b)." *Gordon v. Impulse Mktg. Grp., Inc.*, 375 F. Supp. 2d 1040, 1048 (E.D. Wash. 2005). Rather, they are governed by Rule 8's plausibility standard.

If the Court nonetheless determines that Rule 9(b) applies, Plaintiff meets that standard. Plaintiff alleges with specificity a non-exhaustive list of the false or misleading subject lines contained in FullBeauty's emails, states when those emails were transmitted, and explains why

---

[4] FullBeauty cites cases from outside the CEMA context that carry no persuasive force because they speak to elements that CEMA does not require. *See* Mot. at 6-7.

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(Case No. 2:25-cv-01141-RSM) - 11

each subject line was false or misleading. She identifies categories of deceptive subject lines, provides examples, and explains why the stated subject lines were false or misleading. *See* FAC ¶¶ 17–45. Plaintiff thus provides "an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citing *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)). FullBeauty cannot seriously contend the FAC fails to give "notice of the particular misconduct" at issue, which is all Rule 9(b) requires. *Id.*

**B.     CEMA is not unconstitutional under the dormant Commerce Clause.**

Defendant falls well short of meeting the heavy burden required to mount a facial challenge under the dormant Commerce Clause. CEMA applies evenhandedly, does not discriminate against out-of-state interests, and advances substantial local benefits that outweigh any incidental effects on interstate commerce. Defendant's extraterritoriality theory cannot survive *National Pork*, which rejected the sweeping rule Defendant invokes and limited prior cases to narrow price-control statutes not at issue here. Defendant's failure to grapple with that case (while citing authority it expressly curtailed) underscores the weakness of its position.

**1.     Defendant fails to meet the heavy burden of showing that CEMA is unconstitutional in all its applications.**

"[E]xtreme caution is warranted before a court deploys its implied authority to reject a state law under the dormant Commerce Clause." *Flynt v. Bonta*, 131 F.4th 918, 926 (9th Cir. 2025) (quoting *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 390 (2023)) (internal quotation marks omitted). Defendant challenges CEMA on its face, which is "the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). In other words, the challenged statute must be "unconstitutional in all of its applications." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008). Showing that the law might operate unconstitutionally under some conceivable set of circumstances does not render it invalid. *Salerno*, 481 U.S. at 745. Because they "often rest on speculation," "run contrary to

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(Case No. 2:25-cv-01141-RSM) - 12

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

the fundamental principle of judicial restraint," and "threaten to short circuit the democratic process," facial challenges are disfavored. *Wash. State Grange*, 552 U.S. at 450–51. In addressing this facial challenge, the Court must construe CEMA "narrowly and resolve any ambiguities in favor of the interpretation that most clearly supports constitutionality." *S.D. Myers, Inc. v. City & Cnty. of San Francisco*, 253 F.3d 461, 468 (9th Cir. 2001).

Defendant does not meet the high burden required to succeed on a facial challenge, nor does it even try to argue that CEMA is unconstitutional in all its applications. Rather, FullBeauty's argument rests on speculation that, under certain hypothetical circumstances, CEMA could regulate out-of-state communication. That is not enough to challenge a statute under the dormant Commerce Clause. *See Black Star Farms LLC v. Oliver*, 600 F.3d 1225, 1232 (9th Cir. 2010) ("Courts. . . must be reluctant to invalidate a state statutory scheme. . . simply because it *might* turn out down the road to be at odds with our constitutional prohibition against state laws that discriminate against Interstate Commerce."). Defendant's challenge should be rejected for this reason alone.

Defendant's claim that it raises an as-applied challenge is unfounded. Mot. at 20. Plaintiff alleges she is a Washington resident and that she resided in Washington at all relevant times. FAC ¶¶ 5, 18. CEMA requires nothing more. To the extent Defendant's argument implicates CEMA's constitutionality, it is not entitled to an inference that Plaintiff was located anywhere other than Washington when she received the emails. The hypothetical locations of putative class members when they received Defendant's messages are irrelevant at this stage.

### 2.    CEMA does not discriminate against out-of-state economic interests.

The "antidiscrimination principle lies at the 'very core' of [the Supreme Court's] dormant Commerce Clause jurisprudence." *Nat'l Pork*, 598 U.S. at 369, 377 (citation omitted) ("'[N]o clear line' separates the *Pike* line of cases from [the Court's] core antidiscrimination precedents."). "Discrimination in this context means treating similarly situated in-state and out-of-state economic interests differently in a way that favors the in-state interests." *Ward v. United*

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(Case No. 2:25-cv-01141-RSM) - 13

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1    *Airlines*, 986 F.3d 1234, 1239 (9th Cir. 2021); *see Ass'n des Éleveurs de Canards et d'Oies du*

2    *Québec v. Harris*, 729 F.3d 937, 947 (9th Cir. 2013) ("The primary purpose of the dormant

3    Commerce Clause is to prohibit 'statutes that discriminate against interstate commerce' by

4    providing benefits to 'in-state economic interests' while 'burdening out-of-state competitors.'"

5    (quoting *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1148 (9th Cir.

6    2012)). A state statute may violate this principle by discriminating *directly* or *incidentally*. *See*

7    *Ward*, 986 F.3d at 1239. Statutes that fall in the first category are generally struck down, while

8    statutes in the second category are generally upheld, subject to the balancing test set forth in

9    *Pike v. Bruce Church*, 397 U.S. 137 (1970). *See Ward*, 986 F.3d at 1239. State laws that facially

10   discriminate against out-of-state economic interests are per se invalid. *See Ward*, 986 F.3d at

11   1238; *cf. Nat'l Pork*, 598 U.S. at 364 ("Assuredly, under this Court's dormant Commerce Clause

12   decisions, no State may use its laws to discriminate purposefully against out-of-state economic

13   interests.").

14       CEMA does not discriminate against interstate commerce, neither directly nor

15   incidentally. It is an evenhanded attempt to protect Washingtonians from false and misleading

16   commercial emails; it has nothing to do with economic protectionism. CEMA applies

17   indiscriminately to any sender of commercial email, wherever it is located, and does not

18   advantage or disadvantage in-state or out-of-state businesses. *State v. Heckel*, 24 P.3d 404, 409

19   (Wash. 2001) ("[CEMA] is not facially discriminatory. The Act applies evenhandedly to in-

20   state and out-of-state spammers."); *see also Flynt*, 131 F.4th at 926 (no discrimination against

21   interstate commerce where state laws did not advantage in-state firms or disadvantage out-of-

22   state rivals). CEMA's focus on deceptive conduct—not economic protectionism—makes it

23   precisely the kind of neutral consumer-protection measure the dormant Commerce Clause

24   leaves undisturbed.

25       **3.    CEMA does not impermissibly regulate or control interstate commerce.**

26       Defendant incorrectly argues that per se invalidity is not limited to facially

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(Case No. 2:25-cv-01141-RSM) - 14

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

discriminatory statutes, and that CEMA runs afoul of the dormant Commerce Clause because it directly controls or regulates transactions entirely outside of Washington. Mot. at 13. The out-of-state conduct that CEMA regulates, according to Defendant, is the hypothetical Washington resident who, while temporarily in another state, opens a marketing email from an out-of-state company (like Defendant). Mot. at 14. That hypothetical, out-of-state email receipt is what purportedly renders CEMA unconstitutional, a theory that is both speculative and inconsistent with governing precedent.

According to Defendant, a state statute that "directly regulates" conduct beyond the state's borders is invalid under the dormant Commerce Clause. Mot. at 13–15. That argument runs headlong into *National Pork*, where the Court rejected an "almost *per se*" rule invalidating state laws that have the "practical effect of controlling" out-of-state commerce, emphasizing that in today's national marketplace "many (maybe most)" state laws have such effects. *Nat'l Pork*, 598 U.S. at 371–74. Even if Defendant's hypothetical email receipt outside Washington could be characterized as extraterritorial "control," *National Pork* makes clear that such effects do not establish discrimination under the dormant Commerce Clause.

Defendant's reliance on *Healy v. Beer Institute*, 491 U.S. 324 (1989), and its progeny is misplaced. As the Ninth Circuit has recognized, *Healy* turned on an impermissible discriminatory purpose, not a free-standing extraterritoriality principle. *Flynt*, 131 F.4th at 924. *Healy* involved a Connecticut law that "required out-of-state beer merchants to affirm that their in-state prices were no higher than those they charged in neighboring States." *Nat'l Pork*, 598 U.S. at 372 (citing *Healy*, 491 U.S. at 328–30)). While the *Healy* Court held that the statute violated the dormant Commerce Clause because it impermissibly controlled commercial activity outside Connecticut, *see Healy*, 491 U.S. at 337–40, *National Pork* explicitly cabined *Healy* to price control or price affirmation statutes that tie the price of in-state products to out-of-state prices. *Nat'l Pork*, 598 U.S. at 374 ("This Court has already described the rule that was applied in … *Healy* as addressing price control or price affirmation statutes that tied the price of in-state

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(Case No. 2:25-cv-01141-RSM) - 15

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

products to out-of-state prices." (cleaned up)). *Healy*, therefore, has no application here. Defendant's reliance on *Healy* (a 1989 Supreme Court decision) without so much as citing, let alone grappling with, *National Pork* (a 2023 Supreme Court decision) is questionable at best. *Cf. Flynt*, 131 F.4th at 923 ("As a judge-made and enforced doctrine, the strictures of the dormant Commerce Clause have ebbed and flowed over time through case law, with the Supreme Court refining the doctrine's proper scope.").

Each of the cases Defendant cites in support of its direct regulation of extraterritorial conduct argument relies on *Healy* and predates the Supreme Court's clarification of the *Healy* rule in *National Pork*. *See Daniels Sharpsmart, Inc. v. Smith*, 889 F.3d 608, 615–16 (9th Cir. 2018) (citing *Healy* and *Sam Francis* in an as-applied challenge in the context of a preliminary injunction appeal); *Sam Francis Found. v. Christies, Inc.*, 784 F.3d 1320, 1323–25 (9th Cir. 2015) (holding that California Resale Royalty Act clause regulating out-of-state art sales where seller resides in California was impermissible under *Healy*); *Publius v. Boyer-Vine*, 237 F. Supp. 3d 997, 1024 (E.D. Cal. 2017) (citing *Healy* and concluding, contrary to what the Supreme Court later concluded in *National Pork*, that "Defendant's contention that the extraterritoriality doctrine is limited to price control or price affirmation statutes is without merit"); *Booth v. Appstack, Inc.*, 2015 WL 1466247, at *14 (W.D. Wash. 2015) (involving the Washington statute at issue in *Hartman* and citing both *Hartman* and *Healy* in interpreting the statute consistent with the way the court did in *Hartman*); *Hartman v. United Bank Card, Inc.*, 291 F.R.D. 591, 598–600 (W.D. Wash. 2013) (declining to find that Washington statute restricting use of automatic dialing and announcing devices was unconstitutional, while relying on *Healy* to avoid a "novel statutory construction" that would result in the statute applying to commercial solicitations initiated and received outside Washington); *Am. Librs. Ass'n v. Pataki*, 969 F. Supp. 160, 177 (S.D.N.Y. 1997) (relying on *Healy*'s "extraterritoriality analysis" and finding that New York "deliberately imposed its legislation on the Internet and, by doing so, projected its law into other states whose citizens use the Net").

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(Case No. 2:25-cv-01141-RSM) - 16

The cases Defendant invokes underscore the weakness of its position. Each predates *National Pork* and relies on the broader reading of *Healy* the Supreme Court has now rejected. And even on their own terms, they do not support Defendant's facial challenge. For example, in *Sam Francis*, the California statute at issue purported to mandate royalty payments between private parties outside California. *Sam Francis*, 784 F.3d at 1324. That conduct—regulating an out-of-state art sale by requiring money to change hands between two private parties outside California—is far closer to the extraterritorial pricing control and overreach at the root of *Healy*. The district courts in *Hartman* and *Booth* relied on *Healy* in interpreting the Washington statute at issue. *Hartman*, 291 F.R.D. at 598; *Booth*, 2015 WL 1466247, at *14. Even so, they did not do what Defendant asks of this Court—find the state statute to be unconstitutional on a facial challenge. And unlike this case, *Publius* involved an as-applied, not facial, challenge. *See Publius*, 237 F. Supp. 3d at 1022, n.17. The same is true of *Daniels*. *See Daniels*, 889 F.3d at 616 ("Daniels will likely succeed on its claim that…application of [state statute] constitutes a 'per se violation of the Commerce Clause.'"). And *American Libraries* is not only outdated for reasons other than its reliance on *Healy*, but also far afield from this case because it involved a New York child pornography statute that potentially subjected any Internet user to criminal prosecution in New York. *See Am. Librs.*, 969 F. Supp. at 177. To the extent they remain good authority, these cases do not stand for the proposition that a law prohibiting false or misleading commercial emails must include a requirement that the communication be both initiated from and received in the state to pass muster under the dormant Commerce Clause. *See* Mot. at 13.

The Washington Supreme Court has already upheld CEMA against a dormant Commerce Clause challenge, holding that the statute properly regulates spammers who target Washington consumers. *Heckel*, 24 P.3d at 412. A Maryland appellate court reached the same conclusion under a parallel statute, rejecting the claim that regulating deceptive commercial email amounted to impermissible extraterritorial control. *MaryCLE, LLC v. First Choice Internet, Inc.*, 890 A.2d 818, 842–43 (Md. Ct. Spec. App. 2006) ("MCEMA does not regulate

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(Case No. 2:25-cv-01141-RSM) - 17

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1    exclusively extraterritorial conduct because its focus is not on 'when or where recipients may

2    open the proscribed messages. Rather, the Act addresses the conduct of spammers in targeting

3    Maryland consumers. The choice to send [unsolicited commercial email] all over the country,

4    invoking the probability that it will be received by Maryland residents, is First Choice's business

5    decision." (cleaned up)); *see also Nat'l Fed'n of the Blind v. Target Corp.*, 452 F. Supp. 2d 946,

6    959 (N.D. Cal. 2006) (discussing *Heckel* and *MaryCLE* and noting that "e-mail messages can

7    be targeted at recipients in particular geographical areas").

8         Defendant's claim that residency information may be "outdated or inaccurate," Mot. at

9    15, is pure conjecture and cannot support a constitutional challenge. Even if true, such

10   inaccuracies would not render CEMA unconstitutional in all its applications, as required for a

11   facial challenge. *See Salerno*, 481 U.S. at 745. In any case, *Heckel* rejected the same

12   hypothetical, explaining that it "mistakenly presumes that [CEMA] must be construed to apply

13   to Washington residents when they are out of state, a construction that creates a jurisdictional

14   question not at issue in this case." *Heckel*, 24 P.3d at 412.

15              **4.    CEMA is constitutional under the *Pike* balancing test.**

16        Defendant next invokes the *Pike* balancing test, arguing that CEMA imposes excessive

17   burdens on interstate commerce. But *Pike* requires a threshold showing of a "substantial burden

18   on interstate commerce" before any balancing is undertaken. *Flynt*, 131 F.4th at 931. And even

19   if the Court were to reach step two, the substantial local benefits conferred by CEMA decisively

20   outweigh any incidental burden on interstate commerce.

21        Defendant contends the first step of *Pike* is satisfied by a showing of "interstate impact

22   of national concern." Mot. at 16. That misreads the Ninth Circuit's decision in *National Pork*.

23   The court's discussion of industries of "national concern" occurred outside the *Pike* context, and

24   it emphasized that the "small number" of cases raising such concerns typically involve taxation

25   or interstate transportation. *See Nat'l Pork*, 6 F.4th at 1031–32. Even the pork industry, which

26   operates nationwide, did not meet this stringent test. *See id.* The same is true here.

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(Case No. 2:25-cv-01141-RSM) - 18

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Step one of *Pike* is demanding: "a statute imposes such a significant burden only in rare cases," and "laws that increase compliance costs, without more, do not constitute a significant burden on interstate commerce." *Id.* at 1032. For example, the California statute at issue in *National Pork* did not significantly burden interstate commerce for purposes of the *Pike* analysis even though it "required changes to pig-farming and pork-production practices throughout the United States [that would] cost American farmers and pork producers hundreds of millions (if not billions) of dollars." *Flynt*, 131 F.4th at 932 (quoting *Nat'l Pork*, 598 U.S. at 405–06 (Kavanaugh, J., concurring in part and dissenting in part)). If such sweeping costs did not meet the threshold, CEMA's plainly do not. Even if "commercial email" could be defined as an "industry," this is not the "rare case" where a law imposes a significant burden.

Defendant's fallback claims about inconsistent state legislation and CEMA's supposed projection of its regulatory scheme into other jurisdictions fare no better. With the antidiscrimination principle ever at the forefront, the Ninth Circuit has "rejected arguments that state laws treating out-of-state and in-state entities similarly, but which prevent them from structuring or operating their business as they prefer, reflect improper discrimination in favor of in-state interests." *Flynt*, 131 F.4th at 927.

Finally, Defendant's reliance on CAN-SPAM is simply a repackaged preemption argument. Congress did not displace state regulation of falsity and deception in commercial email, and Defendant does not contend otherwise. "In the absence of conflicting federal legislation, the States retain authority under their general police powers to regulate matters of 'legitimate local concern,' even though interstate commerce may be affected." *Lewis v. BT Inv. Managers*, 447 U.S. 27, 36 (1980). Defendant's *Pike* argument thus fails at step one; the Court need not proceed further.

Should the Court reach the second step of *Pike*, Defendant falls well short of showing that any burden imposed by CEMA is "clearly excessive" relative to its local benefits. "[U]nless the benefits of the state's law are 'illusory,' courts typically accept the state's articulation of the

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(Case No. 2:25-cv-01141-RSM) - 19

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

law's claimed benefits." *Flynt*, 131 F.4th at 925. All Washington email users "bear the cost of deceptive spam," and CEMA "limits the harm that deceptive commercial e-mail causes Washington businesses and citizens." *Heckel*, 24 P.3d at 410, 413. These costs to consumer time, attention, and decision-making are exactly the kind CEMA was designed to prevent.

Even taking Defendant's claim at face value, the notion that CEMA forces out-of-state entities to go to "extreme lengths" to comply cannot outweigh those benefits. Mot. at 17. Billions of dollars in compliance costs failed to move the needle in *National Pork*; the same is certainly true of the purported cost of "weed[ing] out Washington email addresses." *Id.* Nor is CEMA imposing any novel or conflicting regime: CAN-SPAM already prohibits materially false or misleading commercial emails, and CEMA simply reinforces that baseline with private enforcement. FullBeauty can comply with both laws simply by avoiding false or deceptive subject lines. The "burden" is nothing more than refraining from deception, which promotes rather than impedes interstate commerce. *See* Jack L. Goldsmith & Alan O. Sykes, *The Internet and the Dormant Commerce Clause*, 110 Yale L.J. 785, 795 (2001) ("[I]t is hard to see how the antispam laws burden interstate commerce at all. The spam laws essentially require truthfulness in the header, return address, and subject line of the e-mail. Far from burdening commerce, the truthfulness requirement facilitates it by eliminating fraud and deception."). At most, Defendant may need to adjust its systems to exclude Washington recipients from deceptive campaigns, but that is a routine compliance measure, not a constitutionally significant burden.

The compliance burdens Defendant identifies are the kind of ordinary costs that courts, including the Supreme Court in *National Pork*, have held fall "well outside *Pike*'s heartland." *Nat'l Pork*, 598 U.S. at 380. They do not approach the extraordinary burdens that could outweigh CEMA's substantial local benefits. Defendant's *Pike* balancing argument therefore fails.

**5.    CEMA falls within a zone of state authority preserved by Congress and is invulnerable to dormant Commerce Clause attack.**

Finally, as discussed in Part III.A, Congress expressly preserved state authority to regulate falsity and deception in commercial emails in CAN-SPAM's savings clause, and

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(Case No. 2:25-cv-01141-RSM) - 20

CEMA's subject-line provision fits squarely within that carve-out. When Congress authorizes state regulation, that regulation is insulated from dormant Commerce Clause review. *See Ne. Bancorp, Inc. v. Bd. of Governors*, 472 U.S. 159, 174–75 (1985); *South-Central Timber Dev., Inc. v. Wunnicke*, 467 U.S. 82, 91–92 (1984). The Supreme Court has also cautioned against exercising "judicial supremacy under the banner of the dormant Commerce Clause" in ways that would produce "strange" outcomes by invalidating long-recognized state powers. *Nat'l Pork*, 598 U.S. at 374–76; *see also Flynt*, 131 F.4th at 933. Because CEMA regulates deceptive practices within the zone Congress deliberately preserved, it is not subject to dormant Commerce Clause attack. That alone is fatal to Defendant's constitutional challenge.[5]

**C.    Plaintiff sufficiently alleges that FullBeauty knew or had reason to know Plaintiff was a Washington resident.**

FullBeauty's claim that Plaintiff has not plausibly alleged its knowledge of her Washington residency is untenable. Mot. at 20. As the FAC details, FullBeauty admits to deploying a wide array of tools to harvest consumer data, making its professed ignorance about Plaintiff's residency implausible. *See* FAC ¶¶ 46–63. Drawing all inferences in Plaintiff's favor, the FAC easily clears the CEMA knowledge requirement.

CEMA prohibits sending deceptive commercial emails "to an electronic mail address that the sender *knows, or has reason to know*, is held by a Washington resident." Wash. Rev. Code § 19.190.020(1) (emphasis added). CEMA expressly provides that knowledge exists when the recipient's residency information is *available upon request* from the registrant of the domain in the recipient's email address. *Id.* § 19.190.020(2). Knowledge may also be inferred where the

---

[5] FullBeauty's due process argument, raised only in a footnote, is waived. *See Riegels v. Comm'r* (*In re Estate of Saunders*), 745 F.3d 953, 962 n.8 (9th Cir. 2014) ("Arguments raised only in footnotes … are generally deemed waived."). In any event, the constitutionality of statutory damages cannot be resolved now—or even at class certification—based on a hypothetical aggregate award. *See, e.g.*, *In re Toys "R" Us - Del., Inc. FACTA Litig.*, 300 F.R.D. 347, 363 (C.D. Cal. 2013) ("[E]ven if a possible award against Toys will ultimately be unconstitutionally excessive, the certification stage is not the correct point in the proceedings to draw such a conclusion."); *Ramirez v. MGM Mirage, Inc.*, 524 F. Supp. 2d 1226, 1232 (D. Nev. 2007) ("The Court cannot determine at the motion to dismiss stage whether a punitive damages award is excessive."). Any assessment of whether CEMA damages are excessive must await an actual damages award. *See Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1123 (9th Cir. 2022) (considering constitutional question after jury verdict awarding statutory damages).

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(Case No. 2:25-cv-01141-RSM) - 21

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

sender has "reason to know" the recipient is a Washington resident—an objective standard that does not require actual knowledge. *See Von Gohren v. Pac. Nat'l Bank*, 505 P.2d 467, 471 (Wash. Ct. App. 1973) (adopting Restatement definition that a person has "reason to know" when he "has information from which a person of ordinary intelligence, or of the superior intelligence which such person may have, would infer that the fact in question exists or that there is such a substantial chance of its existence that, *if exercising reasonable care* with reference to the matter in question, his action would be predicated upon the assumption of its possible existence").

The FAC alleges multiple bases for actual or constructive knowledge. First, it specifically pleads that a public WHOIS lookup of Plaintiff's email domain revealed registrant contact information in Washington and provided a contact mechanism through Squarespace, the domain registrar. FAC ¶ 68. FullBeauty nonetheless argues that it "could not have contacted the registrant of the domain." Mot. at 22. But that assertion concedes only that FullBeauty never attempted to use the very mechanism the statute identifies for confirming a recipient's residency. Indeed, although FullBeauty asks the Court to take judicial notice of the WHOIS lookup website, Mot. at 22 n.8, it ignores the site's simple two-step process for contacting the registrant. FullBeauty's admitted failure to follow that process is fatal to its argument.

Moreover, Plaintiff's detailed allegations regarding FullBeauty's data-gathering activities establish that it knew *or at least had reason to know* she was a Washington resident. For example, the FAC alleges that FullBeauty can "use its comprehensive suite of analytics tools to create detailed profiles of its customers and email list recipients," deploying "cookies, web beacons, and other tracking technologies" to identify consumers' physical locations. FAC ¶¶ 50–51. FullBeauty's Privacy Policy admits it "may receive information from external parties" including mailing addresses, and that it "***automatically***" collects data such as "traffic data, ***location data***, weblogs," "your ***IP address***," and "information about how you interact with our ads and newsletters." *Id.* ¶¶ 53–54. FullBeauty uses web beacons "to monitor the effectiveness

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

and reach of email campaigns," capturing recipients' IP addresses and locations, and it warns users: "We also collect your IP address, which may allow us to determine your location, including to determine your mailing address." *Id.* ¶ 55–56. It employs Adobe Analytics, Google Analytics, Meta Pixel, and Epsilon, which "can determine the recipient's state-level location by associating the recipient's email address with its proprietary data set" and provide dashboards including location demographics. *Id.* ¶¶ 57–60. The FAC further alleges that Epsilon "can determine the recipient's state-level location by associating the recipient's email address with its proprietary data set" and that "when an individual receives one of FullBeauty's emails containing Epsilon's code, Epsilon will receive data about the email recipient, including but not limited to that recipient's IP address." *Id.* ¶ 59. Thus, "FullBeauty possesses direct knowledge of where its emails are sent and knows that its unlawful emails are sent to individuals located in Washington." *Id.* ¶ 60.

Defendant's assertion that IP addresses are not reliable for geolocation overlooks both the FAC's detailed allegations and FullBeauty's own statements regarding its use of this data.[6] Relying on FullBeauty's disclosures, the FAC establishes a direct link between FullBeauty's collection of IP information and the determination of the user's geolocation. In other words, IP addresses are not the end of the inquiry: they are a starting point, combined with other data points and analytics tools, to resolve a recipient's location to the state level. While an IP address may or may not pinpoint a user's street address, the FAC alleges that it reliably indicates the user's state or region, particularly when paired with the other data points available to FullBeauty. FullBeauty cannot minimize the reliability of IP data when its own Privacy Policy and vendor relationships show that it collects, enriches, and exploits that data precisely to identify where its

---

[6] Defendant cites cases that purportedly question the "reliability of using IP addresses for geolocation purposes." Mot. at 21. These cases present outlier views and arise in different procedural contexts. *Gutierrez v. Converse Inc.*, 2024 WL 2106952, at *17 (C.D. Cal. 2024) (order on motion to compel); *Malibu Media, LLC v. Doe*, 2014 WL 2615351, at *2 (S.D. Fla. 2014) (sua sponte order to show cause regarding venue). Courts routinely credit the use of IP addresses to establish threshold issues such as personal jurisdiction and venue. *See, e.g.*, *Malibu Media, LLC v. John Does*, 2012 WL 2921227 (S.D. Cal. July 17, 2012). If IP evidence is sufficiently reliable to establish venue, it logically gives Defendant at least "reason to know" of Plaintiff's Washington residency.

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(Case No. 2:25-cv-01141-RSM) - 23

customers reside. FAC ¶ 56 (alleging that FullBeauty "advised its customers and website visitors in a previous version of its privacy policy: 'We also collect your IP address, which may allow us to determine your location, including to determine your mailing address.'").

FullBeauty's reliance on *Beagle v. Amazon.com, Inc.*, 2024 WL 4028290 (W.D. Wash. Sep. 3, 2024), is misplaced. There, the plaintiffs alleged only that Amazon "may provide" data to third parties—allegations "consistent with" liability but not sufficient to make it plausible that third-party disclosure occurred. *Id.* at *7–8. Unlike *Beagle*, which turned on whether a discrete disclosure did or did not occur, the standard here is whether FullBeauty knew *or had reason to know* Plaintiff's residency—a standard that can be satisfied through the vast data FullBeauty allegedly collected. *See generally* FAC ¶¶ 46–63.

At bottom, Plaintiff plausibly alleges that FullBeauty had reason to know she was a Washington resident—*i.e.*, it had sufficient information to "infer that the fact in question exists or that there is such a substantial chance of its existence" and therefore should have acted based "upon the assumption of its possible existence." *Von Gohren*, 505 P.2d at 471–72. Even if FullBeauty denies reviewing Plaintiff's residency data, it had the tools, systems, and information from which any reasonable actor would have recognized a substantial likelihood that she was a Washington resident. Collecting and analyzing this mosaic of data while disavowing knowledge of residency is precisely the kind of willful blindness that CEMA's reason-to-know standard forbids. Plaintiff has therefore adequately alleged the knowledge element.

### D.    Plaintiff sufficiently alleges that FullBeauty's extended sales were predetermined.

Plaintiff alleges that FullBeauty uses subject lines that falsely claim a sale will end at a specified time, only to announce a supposed "extension" the next day—even though FullBeauty "determines in advance how long it will offer a given promotion, such that it knows when it represents the limited duration of the promotion that the description is untruthful." FAC ¶¶ 17–24. FullBeauty misstates both the facts and the law in claiming the FAC fails to "preclude the plausible alternative explanation that FullBeauty extended the relevant sales in response to

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT
(Case No. 2:25-cv-01141-RSM) - 24

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

subsequently developed business conditions." Mot. at 22. The law requires plausibility, not the elimination of every conceivable alternative. As the Ninth Circuit has explained, when "there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible," the plaintiff's claim survives. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). By focusing only on the plausibility of its *own* account, FullBeauty never explains why its narrative is "so convincing that [P]laintiff's explanation is implausible." *Id.*

Moreover, the FAC alleges facts that affirmatively undercut FullBeauty's "innocuous alternative explanation." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014). Plaintiff alleges that "[t]he timing of FullBeauty's marketing emails excludes any reasonable possibility that FullBeauty has a practice of extending the period for specific promotional offers on an ad hoc, last-minute basis in response to business conditions or performance targets." FAC ¶ 23. FullBeauty often sends "the last of the emails warning of a promotion ending in a matter of hours" at the end of the day and announces an "extension" early in the morning the next day. *Id.* Plaintiff further alleges that some "extensions" are preordained by expiration dates in the fine print of the body of FullBeauty's own emails, which contradict subject lines claiming the sale will end sooner.[7] *Id.* ¶ 24.

Taken together, these allegations plausibly establish that "FullBeauty's frequent use of 'one day only' sales followed by 'surprise' extensions just hours later is the product of careful planning, not late-night iteration." *Id.* ¶ 18 (citing 16 C.F.R. § 233.5 (prohibiting "limited" offers that are not in fact limited)). That is more than enough to plead a claim.

### E.    Plaintiff states a claim under the CPA.

Plaintiff states a claim under the CPA because a violation of CEMA is, by statute, a per se violation of the CPA. Wash. Rev. Code § 19.190.030(3). The symbiotic relationship between

---

[7] FullBeauty contends without evidence that the expiration date in one email reflects an "apparent scrivener's error." Mot. at 23 n.9. It is not clear what FullBeauty expects the Court to do with this bare assertion, as it did not request judicial notice or submit a sworn declaration to support the claim (either of which would be improper at this stage). *See Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001) (stating that "a court may not take judicial notice of a fact that is 'subject to reasonable dispute'" (quoting Fed. R. Evid. 201(b)).

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT
(Case No. 2:25-cv-01141-RSM) - 25

these two statutes is well established: once a plaintiff plausibly alleges a CEMA violation, the essential elements of a CPA claim are established as a matter of law. *Gragg v. Orange Cab Co.*, 145 F. Supp. 3d 1046, 1053–54 (W.D. Wash. 2015). Plaintiff's CPA claim therefore follows directly from her CEMA allegations; no independent pleading of the CPA elements is required. FullBeauty's cases simply reflect that a CPA claim predicated on a CEMA violation cannot stand in the absence of a valid CEMA claim. *See* Mot. at 24. Here, Plaintiff has plausibly alleged a CEMA violation; the CPA claim therefore proceeds as a matter of law.

## IV.    <u>CONCLUSION</u>

The Court should deny FullBeauty's motion in full. If the Court accepts any of FullBeauty's arguments, Plaintiff requests leave to amend to correct any pleading deficiencies.

DATED this 2nd day of October, 2025.

*I certify that this memorandum contains 9,468 words, in compliance with the Local Civil Rules.*

TOUSLEY BRAIN STEPHENS PLLC

By: */s/ Jason T. Dennett*
Jason T. Dennett, WSBA #30686
Kaleigh N. Boyd, WSBA #52684
1200 Fifth Avenue, Suite 1700
Seattle, WA 98101
Tel: 206-682-5600
Fax: 206-682-2992
Email: jdennett@tousley.com
Email: kboyd@tousley.com

Edwin J. Kilpela, Jr. (admitted *pro hac vice*)
James Lamarca (admitted *pro hac vice*)
WADE KILPELA SLADE LLP
6425 Living Place, Suite 200
Pittsburgh, PA 15206
Tel: 412-314-0515
Email: ek@waykayslay.com
Email: jlamarca@waykayslay.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Evan E. North (admitted *pro hac vice*)
NORTH LAW PLLC
1900 Market Street, Suite 800
Philadelphia, PA 19103
Tel: 202-921-1651
Email: evan@northlawpllc.com

***Attorneys for Plaintiff and the Proposed Class***

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992