The Honorable Ricardo S. Martinez

1

2

3

4

5

6

7               UNITED STATES DISTRICT COURT
            WESTERN DISTRICT OF WASHINGTON
8                       AT SEATTLE

9   JULIE ANNE KEMPF, on behalf of herself       NO. 2:25-cv-1141-RSM
    and all others similarly situated,
10                                                PLAINTIFF-INTERVENOR STATE OF
                        Plaintiff,                WASHINGTON'S OPPOSITION TO
11                                                DEFENDANT'S MOTION TO DISMISS
            and
12                                                NOTE ON MOTION CALENDAR:
    STATE OF WASHINGTON,                          November 14, 2025
13
                        Proposed Plaintiff-
14                      Intervenor,

15          v.

16  FULLBEAUTY BRANDS OPERATIONS
    LLC, an Indiana limited liability company,
17
                        Defendants.
18

19

20

21

22

23

24

25

26

1

***TABLE OF CONTENTS***

2   I.      INTRODUCTION...................................................................................................1

3   II.     BACKGROUND....................................................................................................1

4   III.    ARGUMENT .........................................................................................................2

5           A.      CAN-SPAM Does not Preempt CEMA Claims About Deceptive Subject
                    Lines............................................................................................................2
6
7                   1.      A plaintiff need not plead common law tort elements to avoid preemption .......3

8                   2.      A plaintiff need not specifically plead fraud to avoid preemption.....................6

9                   3.      Applying Rule 9(b)'s heightened pleading standards is inconsistent with
                            the CPA ...............................................................................................8
10
                    4.      CEMA complements CAN-SPAM ..................................................... 10
11
            B.      CEMA Does Not Violate the Dormant Commerce Clause ..................................... 11
12
                    1.      The U.S. Supreme Court rejected FullBeauty's extraterritoriality
13                          argument in 2023 ................................................................................. 12

14                  2.      FullBeauty's facial challenge to CEMA fails *ab initio* ..................................... 15

15                  3.      FullBeauty does not allege and cannot establish discrimination under the
                            dormant Commerce Clause ................................................................... 16
16
                    4.      FullBeauty cannot establish a significant burden on interstate commerce
17                          nor that any such burden outweighs CEMA's benefits to consumers.............. 17

18          C.      CEMA's Damages Provision is Constitutional ....................................................... 20

19  IV.     CONCLUSION .................................................................................................. 21

20

21

22

23

24

25

26

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - ii
(2:25-cv-1141-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

1

***TABLE OF AUTHORITIES***

2

<u>**Cases**</u>

3

4

*Am. Apparel & Footwear Ass'n, Inc. v. Baden*,
   107 F.4th 934 (9th Cir. 2024) .................................................................................... 3

5

*Andrews v. Conversion Squared Corp.*,
   No. 8:20-cv-00247-JLS-JDE, 2020 WL 3978063 (C.D. Cal. May 8, 2020) ........................ 6

6

7

*Asis Internet Servs. v. Consumerbargaingiveaways, LLC*,
   622 F. Supp. 2d 935 (N.D. Cal. 2009) ........................................................................ 10

8

*Asis Internet Servs. v. Member Source Media, LLC*,
   No. C-08-1321 EMC, 2010 WL 1610066 (N.D. Cal. Apr. 20, 2010) ................................ 6

9

10

*Asis Internet Servs. v. Subscriberbase Inc.*,
   No. 09-3503 SC, 2010 WL 1267763 (N.D. Cal. Apr. 1, 2010) ........................................ 11

11

*Ass'n des Éleveurs de Canards et d'Oies du Québec v. Harris*,
   729 F.3d 937 (9th Cir. 2013) .................................................................................... 12

12

13

*Baertschi v. Jordan*,
   413 P.2d 657 (Wash. 1966) ....................................................................................... 8

14

*Beyond Sys., Inc. v. Kraft Foods, Inc.*,
   777 F.3d 712 (4th Cir. 2015) ..................................................................................... 7

15

16

*Black Star Farms LLC v. Oliver*,
   600 F.3d 1225 (9th Cir. 2010) .............................................................................. 16, 17

17

*Brown & Williamson Tobacco Corp. v. Pataki*,
   320 F.3d 200 (2d Cir. 2003) ..................................................................................... 17

18

19

*Brown v. Old Navy, LLC*,
   567 P.3d 38 (Wash. 2025) ..................................................................................... 5, 20

20

*Brummett v. Washington's Lottery*,
   288 P.3d 48 (Wash. App. 2012) ................................................................................. 5

21

22

*Carmickle v. Comm'r, Soc. Sec. Admin.*,
   533 F.3d 1155 (9th Cir. 2003) ................................................................................... 16

23

*Conway v. Taylor's Ex'r*,
   66 U.S. 603 (1862) ................................................................................................. 12

24

25

*Davison Design & Dev. Inc. v. Riley*,
   No. C 11-2970 PJH, 2013 WL 1222691 (N.D. Cal. Mar. 25, 2013) ............................... 7, 8

26

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - iii
(2:25-cv-1141-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

*Deegan v. Windermere Real Est./Ctr.-Isle, Inc.*,
    391 P.3d 582 (Wash. App. 2017) ........................................................................ 8

*Edgar v. MITE Corp.*,
    457 U.S. 624 (1982) ...................................................................................... 14

*Elcon Const., Inc. v. E. Washington Univ.*,
    273 P.3d 965 (Wash. 2012) ............................................................................. 5

*Erie R. Co. v. Tompkins*,
    304 U.S. 64 (1938).......................................................................................... 8

*Gen. Motors Corp. v. Tracy*,
    519 U.S. 278 (1997)...................................................................................... 17

*Glave v. Glebe*,
    No. C11-5529-RJB-JRC, 2012 WL 761146 (W.D. Wash. Jan. 26, 2012) ........................... 20

*Gordon v. Impulse Mktg. Grp., Inc.*,
    375 F. Supp. 2d 1040 (E.D. Wash. 2005) ........................................................... 8

*Gordon v. Virtumundo, Inc.*,
    575 F.3d 1040 (9th Cir. 2009) ........................................................... 3, 4, 5, 10

*Harbers v. Eddie Bauer, LLC*,
    415 F. Supp. 3d 999 (W.D. Wash. 2019) ............................................................. 7

*Healy v. Beer Institute, Inc.*,
    491 U.S. 324 (1989)............................................................................ 12, 13, 14

*Heft v. Moore*,
    351 F.3d 278 (7th Cir. 2003) ........................................................................ 16

*Hendrix ex rel. United States v. J-M Mfg. Co., Inc.*,
    76 F.4th 1164 (9th Cir. 2023) ......................................................................... 5

*Hoang v. Reunion.com, Inc.*,
    No. C-08-3518 MMC, 2010 WL 1340535 (N.D. Cal. Mar. 31, 2010) ................................. 6

*Hypertouch Inc. v. ValueClick, Inc.*,
    123 Cal. Rptr. 3d 8 (Cal. App. 2011)................................................................. 7

*In re Park W. Galleries, Inc.*,
    No. MDL 09-2076RSL, 2010 WL 56044 (W.D. Wash. Jan. 5, 2010) ................................ 20

*Int'l Franchise Ass'n, Inc. v. City of Seattle*,
    803 F.3d 389 (9th Cir. 2015) ........................................................................ 12

*Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*,
    998 F.3d 397 (9th Cir. 2021) ...................................................................... 8, 9

*Kleenwell Biohazard Waste & Gen. Ecology Consultants, Inc. v. Nelson*,
    48 F.3d 391 (9th Cir. 1995) ............................................................................................ 18

*Kleffman v. Vonage Holdings Corp.*,
    2007 WL 1518650 (C.D. Cal. May 23, 2007) ................................................................. 7

*Martin v. CCH, Inc.*,
    784 F. Supp. 2d 1000 (N.D. Ill. 2011) ............................................................................ 6

*Martin v. Miller*,
    600 P.2d 698 (Wash. App. 1979) .................................................................................... 5

*Martins v. Vermont Mut. Ins. Co.*,
    92 F.4th 325 (1st Cir. 2024) ........................................................................................... 8

*Minnesota v. Clover Leaf Creamery Co.*,
    449 U.S. 456 (1981) ...................................................................................................... 19

*Mitchell v. Atkins*,
    483 F. Supp. 3d 985 (W.D. Wash. 2020), *vacated and remanded on other grounds by*
    *Michell v. Atkins*, No. 20-35827, 2022 WL 17420766 (9th Cir. Dec. 2, 2022) ..................... 16

*Nat'l Ass'n of Optometrists & Opticians v. Harris*,
    682 F.3d 1144 (9th Cir. 2012) ...................................................................................... 19

*National Pork Producers Council v. Ross*,
    598 U.S. 356 (2023) ............................................................................................... *passim*

*National Shooting Sports Foundation v. Bonta*,
    718 F. Supp. 3d 1244 (S.D. Cal. 2024), *reconsideration denied*,
    No. 23-CV-0945-AGS-KSC, 2025 WL 1012326 (S.D. Cal. Mar. 31, 2025) ...................... 15

*Ohralik v. Ohio State Bar Ass'n*,
    436 U.S. 447 (1978) ...................................................................................................... 20

*Omega World Travel, Inc. v. Mummagraphics, Inc.*,
    469 F.3d 348 (4th Cir. 2006) ................................................................................. 3, 4, 7

*Panag v. Farmers Ins. Co. of Washington*,
    204 P.3d 885 (Wash. 2009) ............................................................................................ 8

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ...................................................................................................... 14

*Pike v. Bruce Church, Inc.*,
    397 U.S. 137 (1970) ................................................................................................. 17, 19

*REX - Real Estate Exch. Inc. v. Zillow Inc.*,
    No. C21-312 TSZ, 2021 WL 3930694 (W.D. Wash. Sept. 2, 2021) .................................. 9

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - v
(2:25-cv-1141-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

*Rocky Mtn. Farmers Union v. Corey*,
  730 F.3d 1070 (9th Cir. 2013) ............................................................................ 16

*Rosenblatt v. City of Santa Monica*,
  940 F.3d 439 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 2762 (2020).................... 17

*Rubke v. Capitol Bancorp Ltd.*,
  551 F.3d 1156 (9th Cir. 2009) ........................................................................... 8, 9

*S.D. Myers, Inc. v. City & Cnty. of San Francisco*,
  253 F.3d 461 (9th Cir. 2001) ............................................................................... 15

*Scott v. Cingular Wireless*,
  161 P.3d 1000 (Wash. 2007) .................................................................................. 2

*State Farm Fire & Cas. Co. v. Huynh*,
  962 P.2d 854 (Wash. App. 1998) ........................................................................... 8

*State v. Heckel*,
  24 P.3d 404 (Wash. 2001), *cert. denied*, 534 U.S. 997 (2001)............................ 18

*State v. State Credit Ass'n*,
  689 P.2d 403 (Wash. 1984) .................................................................................... 9

*State v. State Credit Ass'n, Inc.*,
  657 P.2d 327 (Wash. App. 1983) ........................................................................... 9

*Stieneke v. Russi*,
  190 P.3d 60 (Wash. App. 2008) ............................................................................. 8

*Sullivan v. Oracle Corp.*,
  662 F.3d 1265 (9th Cir. 2011) ............................................................................. 17

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) ........................................................................... 9, 10

*Tenn. Wine & Spirits Retailers Ass'n v. Thomas*,
  588 U.S. 504 (2019)............................................................................................. 11

*ThermoLife Int'l LLC v. NeoGenis Labs Inc.*,
  CV-18-02980-PHX-DWL, 2020 WL 6395442 (D. Ariz. Nov. 2, 2020)................. 3

*Truesdell v. Friedlander*,
  80 F.4th 762 (6th Cir. 2023), *cert. denied*, 144 S. Ct. 1344 (2024), *and cert. denied*,
  144 S. Ct. 1346 (2024)......................................................................................... 18

*United Res. Sys., Inc. v. Wilson*,
  614 F. Supp. 3d 243 (D.S.C. 2022) ...................................................................... 13

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ............................................................................... 9

*Wagner v. Spire Vision*,
    No. C 13-04952 WHA, 2014 WL 889483 (N.D. Cal. Mar. 3, 2014) ..................................... 6

*Wakefield v. ViSalus, Inc.*,
    51 F.4th 1109 (9th Cir. 2022) .......................................................................................... 20, 21

*Wash. State Grange v. Wash. State Republican Party*,
    552 U.S. 442 (2008) .............................................................................................................. 15

*Wigod v. Wells Fargo Bank, N.A.*,
    673 F.3d 547 (7th Cir. 2012) ................................................................................................ 11

*Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*,
    471 U.S. 626 (1985) .............................................................................................................. 20

**Statutes**

15 U.S.C. § 7704(a)(2) .............................................................................................................. 10

15 U.S.C. § 7707(b)(1) ................................................................................................................ 3

15 U.S.C. § 7707(b)(2) .............................................................................................................. 10

28 U.S.C. § 2403(b) ..................................................................................................................... 2

Wash. Rev. Code § 19.190.020(1)(a) .......................................................................................... 4

Wash. Rev. Code § 19.190.020(1)(b) ........................................................................... 2, 3, 10, 17

Wash. Rev. Code § 19.190.030(1)(b) ........................................................................................... 8

Wash. Rev. Code § 19.190.030(3) ............................................................................................. 19

Wash. Rev. Code § 19.86.920 ..................................................................................................... 8

**Other Authorities**

Laws of 1998, ch. 149, § 1 ......................................................................................................... 19

Washington House Bill Report, 1998 Reg. Sess. H.B. 2752,
    H. Comm. on Energy & Utilities, 55th Legislature ................................................................ 2

Washington Senate Bill Report, 1999 Reg. Sess. H.B. 1037,
    S. Comm. On Energy, Technology, & Telecommunications, 56th Legislature ..................... 2

**Constitutional Provisions**

U.S. Const. art. I, § 8, cl. 3 ....................................................................................................... 11

U.S. Const. art. VI, cl. 2 .............................................................................................................. 2

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - vii
(2:25-cv-1141-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

## I.    INTRODUCTION

Washington's Commercial Electronic Mail Act (CEMA) is constitutional. The statute protects Washington residents from deceptive commercial email messages and makes sending them a violation of the Washington Consumer Protection Act (CPA). The federal Controlling the Assault of Non-Solicited Pornography and Marketing Act (CAN-SPAM) does not preempt CEMA. In arguing otherwise, Defendant FullBeauty Brands Operations, LLC (FullBeauty) tries to impose on plaintiffs a heightened fraud standard that is not found anywhere in either CEMA or CAN-SPAM. CAN-SPAM's preemption savings clause specifically carves out and preserves state statutes like CEMA that prohibit misleading or deceptive emails. FullBeauty's cited authority does not support its argument that CEMA plaintiffs must plead fraud or another tort to avoid preemption, nor does FullBeauty acknowledge the many courts that have rejected that argument.

CEMA also does not discriminate against out-of-state interests or otherwise violate the dormant Commerce Clause. Like many state laws, CEMA's protection may, at times, have a practical effect on people or companies outside Washington; that occasional extraterritorial impact does not offend the United States Constitution. FullBeauty's arguments misunderstand federal constitutional law and the operation of the interconnected modern economy. Tellingly, FullBeauty fails to discuss the recent United States Supreme Court case that expressly—and unanimously—rejected FullBeauty's argument—*National Pork Producers Council v. Ross*.[1] This Court should deny the motion.

## II.    BACKGROUND

Adopted in 1998, CEMA's application to email is narrow. At issue here is CEMA's prohibition on sending email marketing messages containing "false or misleading information," specifically "in the subject line," to email addresses a sender knows or has reason to know

---

[1] 598 U.S. 356, 371(2023).

belongs to Washington State residents. Wash. Rev. Code § 19.190.020(1)(b). Legislative testimony emphasized that CEMA "allows expansion of Internet usage while curtailing abuses before they reach crisis." Washington Senate Bill Report, 1999 Reg. Sess. H.B. 1037, S. Comm. On Energy, Technology, & Telecommunications, 56th Legislature. The Attorney General's Office reported to the Legislature that during the five-month period before CEMA's passage, of 322 complaints received about unsolicited email, many were commercial advertisements and "spam [was] the highest category of consumer complaints" the office received overall. *Id.*; Washington House Bill Report, 1998 Reg. Sess. H.B. 2752, H. Comm. on Energy & Utilities, 55th Legislature.

## III.    ARGUMENT

The State intervenes for the limited purpose of defending CEMA's constitutionality pursuant to 28 U.S.C. § 2403(b). It takes no position with respect to other issues raised in the litigation. Overall, the State agrees with the arguments regarding CEMA's constitutionality in Plaintiff's response brief. Dkt. 27. The State writes separately, however, to offer the perspective of the State's chief law enforcement officer as to CEMA's constitutionality, its proper interpretation, and the importance of private enforcement of consumer protection statutes like CEMA. *See Scott v. Cingular Wireless*, 161 P.3d 1000, 1006 (Wash. 2007) (observing "[p]rivate actions by private citizens are now an integral part of CPA enforcement" and that consumers "bringing actions under the CPA do not merely vindicate their own rights; they represent the public interest and may seek injunctive relief even when the injunction would not directly affect their own private interests").

### A.    CAN-SPAM Does not Preempt CEMA Claims About Deceptive Subject Lines[2]

Any preemption analysis begins with the "presumption against supplanting the historic police powers of the States by federal legislation unless that is the clear and manifest purpose of

---

[2] Preemption is a constitutional issue warranting the State's intervention under Rule 5.1. *See Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1060 (9th Cir. 2009) (citing U.S. Const. art. VI, cl. 2)

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - 2
(2:25-cv-1141-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

1    Congress." *Gordon v. Virtumundo, Inc*., 575 F.3d 1040, 1060 (9th Cir. 2009) (*Virtumundo*)

2    (cleaned up). "This presumption against preemption leads us to the principle that express

3    preemption statutory provisions should be given narrow interpretation." *Id*. (cleaned up).

4        As relevant here, CAN-SPAM's preemption clause is extremely limited. While it states

5    that the statute supersedes any state law that "regulates the use of electronic mail to send

6    commercial messages," it expressly exempts "any such statute" that "prohibits falsity or

7    deception in any portion of a commercial electronic mail message or information attached

8    thereto." 15 U.S.C. § 7707(b)(1). The CEMA provision at issue here does just that, prohibiting

9    any email that "[c]ontains false or misleading information in the subject line." Wash. Rev. Code

10   § 19.190.020(1)(b). This plain language should end the analysis. *Am. Apparel & Footwear Ass'n,*

11   *Inc. v. Baden*, 107 F.4th 934, 939 (9th Cir. 2024) (to interpret an express preemption clause, a

12   court is required "to look to the plain wording of the statute and surrounding statutory framework

13   to determine whether Congress intended to preempt state law").

14       **1.    A plaintiff need not plead common law tort elements to avoid preemption**

15        Despite CAN-SPAM's plain language, FullBeauty presses a restrictive reading of the

16   preemption clause, asserting it "saves <u>only</u>" traditional tort theories like fraud from preemption.

17   Dkt. 25 at 1, 5-11 (emphasis added). This is incorrect as a matter of law and cannot be squared

18   with FullBeauty's own authorities. *Id*. (relying primarily on *Virtumundo*).

19        Sixteen years ago, *Virtumundo* addressed the scope of CAN-SPAM's preemption clause

20   as an issue of first impression in this circuit, relying in part on the then-only federal circuit court

21   decision addressing the clause. *Omega World Travel, Inc. v. Mummagraphics, Inc*.,

22   469 F.3d 348 (4th Cir. 2006); 575 F.3d at 1059-60; *see also* Dkt. 25 at 6 (citing same). However,

23   neither *Virtumundo* nor *Omega* held that common law torts like fraud are the only state law

24

25    (observing preemption doctrine "derives from the Supremacy Clause of the United States Constitution");
   *ThermoLife Int'l LLC v. NeoGenis Labs Inc.*, CV-18-02980-PHX-DWL, 2020 WL 6395442, at *16

26   (D. Ariz. Nov. 2, 2020) (stating because preemption claims are constitutional in nature, state must be
   allowed to address such claims).

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - 3
(2:25-cv-1141-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

claims saved from the CAN-SPAM preemption clause. To the contrary, both cases *confirm* the exception applies broadly to "traditionally tortious or wrongful conduct." *Virtumundo*, 575 F.3d at 1062 (quoting *Omega*, 469 F.3d at 354) (emphasis added). Far from supporting FullBeauty's arguments, *Virtumundo* explained state law claims about deceptive email subject lines were not preempted. *Id*. at 1062 (observing legislative intent that "a State law prohibiting *fraudulent or deceptive* headers, subject lines, or content in commercial e-mail would not be preempted").

   *Virtumundo* did not address deceptive email subject lines. Instead, it considered whether CAN-SPAM preempted the plaintiff's claims under CEMA's provision (1)(a), which prohibits email that "misrepresents or obscures" information about the sender. Wash. Rev. Code § 19.190.020(1)(a). That provision is not at issue here. In any event, the *Virtumundo* plaintiff admitted none of the emails at issue misled or deceived him "in any way." *Virtumundo*, 575 F.3d at 1063. Rather, he asserted the sender should have been "Virtumundo" rather than the abbreviated domain names they used. *Id*. at 1063-1064. The Ninth Circuit concluded that such "technical" allegations of "non-deceptive" inaccuracies or omissions are "at best" claims for "incomplete or less than comprehensive information." *Id*. at 1064. Understandably, the court concluded that, to the extent that provision (1)(a) addressed non-deceptive acts and practices this did not rise to the level of "wrongful conduct" or "falsity or deception" necessary to avoid preemption. *Id*. at 1062, 1064. The *Omega* court likewise was focused on state law claims that could potentially impose strict liability for "insignificant inaccuracies" or "bare error" rather than "falsity or deception." 469 F.3d at 352-56. This case, in contrast, is about provision 1(b), which only prohibits "false or misleading information" and cannot be read to impose liability for simple mistakes. *Virtumundo* and *Omega* thus do not support preemption.

   Further, in *Virtumundo*, the Ninth Circuit acknowledged that CEMA's Section .020(1)'s title ("Unpermitted or *misleading* electronic mail") as well as the "statute's intersection with Washington's consumer protection laws" at least suggested CEMA "extends only to deceptive commercial e-mail" rather than non-deceptive acts or mere clerical errors. *Id*. at n.17 (emphasis

PLAINTIFF-INTERVENOR STATE OF WASHINGTON'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 4 (2:25-cv-1141-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

1   in original). When the Ninth Circuit decided *Virtumundo* in 2009, however, it observed that how

2   narrowly or broadly to interpret CEMA was unsettled. 575 F.3d at 1059. The *Virtumundo* Court

3   thus concluded that "state courts may ultimately mold CEMA's broad language so as to cabin

4   its breadth or interpret the law in conformity with federal legislation." *Id.* at 1059. This year,

5   following certification from this Court, the Washington State Supreme Court did just that in

6   *Brown v. Old Navy, LLC*, 567 P.3d 38, 47 (Wash. 2025).

7         In *Brown*, the court confirmed that CEMA's subject line provision does not prohibit mere

8   technical errors or "mere puffery." *Id*. The *Brown* court held CEMA's subject line provision

9   addresses deceptive "representations of fact—like the duration or availability of a promotion, its

10  terms and nature, the cost of goods, and other facts Washington residents would depend on in

11  making their consumer decisions." *Id.* In short, CEMA's subject line provision prohibits false or

12  deceptive statements about facts that would be important to consumer decision making, and to

13  the extent there was any question, *Brown* thus harmonizes CEMA with CAN-SPAM.

14        Tellingly, FullBeauty does not acknowledge the *Brown* opinion, instead arguing that

15  plaintiffs "must, at minimum demonstrate that the allegedly false or misleading subject lines

16  were material" <u>to them personally</u> to avoid preemption. Dkt. 25 at 6-8. This argument for

17  pleading individualized reliance cannot stand after *Brown*, where the Washington State Supreme

18  Court held that CEMA's subject line provision excludes puffery or "banal hyperbole" but does

19  prohibit claims premised upon misrepresentations of fact to Washington consumers.[3] 567 P.3d

20

21

---

22      [3] FullBeauty's citations to the contrary are inapposite. Three of those cases address actual fraud
    claims, one addresses the False Claims Act, and each case merely states the elements of <u>those</u> claims,

23  rather than a CEMA claim. *See Elcon Const., Inc. v. E. Washington Univ*., 273 P.3d 965, 970-71
    (Wash. 2012) (assessing "fraudulent inducement" claim); *Martin v. Miller*, 600 P.2d 698, 700-01

24  (Wash. App. 1979) (assessing "common law fraud" claim); *Brummett v. Washington's Lottery*,
    288 P.3d 48, 53-55 (Wash. App. 2012) (same); *Hendrix ex rel. United States v. J-M Mfg. Co., Inc.*,

25  76 F.4th 1164, 1169-1175 (9th Cir. 2023) (assessing False Claims Act allegations). In *Brummett*, the
    Washington Court of Appeals noted in dicta that a court, when assessing whether ads were deceptive

26  under the CPA, could look to inducement of either plaintiff <u>or others</u>. 288 P.3d at 55.

---

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - 5
(2:25-cv-1141-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

1    at 47. Nothing in the *Brown* opinion requires an individualized assessment or pleading of reliance

2    by each plaintiff.

3           Finally, FullBeauty argues that all claims regarding deceptive subject lines, or anything

4    "outside the body of the email" are preempted. Dkt. 25 at 8 (citing *Martin v. CCH, Inc*.,

5    784 F. Supp. 2d 1000, 1007 (N.D. Ill. 2011) and *Andrews v. Conversion Squared Corp*.,

6    No. 8:20-cv-00247-JLS-JDE, 2020 WL 3978063, at *2 (C.D. Cal. May 8, 2020) (unpublished)).

7    Like *Virtumundo*, however, FullBeauty's cases primarily address preemption of technical claims

8    regarding missing information about email senders. None of these cases held that all claims

9    regarding deceptive subject lines are preempted. *See Martin*, 784 F. Supp. 2d at 1006 (suggesting

10   in dicta that some technical claims regarding "incomplete" or "less than comprehensive" subject

11   lines may be preempted); *Andrews*, 2020 WL 3978063, at *3 (holding the plaintiffs "do not

12   really allege deception, period" and finding their "technical" allegations of "missing

13   information" about the email sender preempted). These district court cases are thus of limited

14   value here.

15          **2.      A plaintiff need not specifically plead fraud to avoid preemption**

16          FullBeauty spends considerable time addressing the elements of fraud. But consumer

17   protection statutes such as CEMA do not sound in fraud, and "[t]he great weight of district court

18   and state court decisions" reject a requirement that consumers plead "all the elements of common

19   law fraud," including damages or reliance, to avoid preemption of their anti-spam law claims.

20   *Wagner v. Spire Vision*, No. C 13-04952 WHA, 2014 WL 889483, at *2-4 (N.D. Cal. Mar. 3,

21   2014) (collecting cases); *Asis Internet Servs. v. Member Source Media, LLC*,

22   No. C-08-1321 EMC, 2010 WL 1610066, at *3 (N.D. Cal. Apr. 20, 2010) (considering

23   California's subject line provision, *Virtumundo*, and CAN-SPAM's preemption clause, and

24   holding plaintiff "need not plead reliance and damages in order for its claim to be excepted from

25   preemption"); *Hoang v. Reunion.com, Inc.*, No. C-08-3518 MMC, 2010 WL 1340535, at *6

26   (N.D. Cal. Mar. 31, 2010) (reversing dismissal under *Virtumundo*, holding failure to allege

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - 6
(2:25-cv-1141-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

1  detrimental reliance was not proper grounds for dismissal). This Court should not impose

2  non-statutory fraud standards here.

3        CEMA's prohibition on false or misleading subject lines, like similar consumer

4  protection statutes, reflects policy decisions about wrongful conduct for which there was no

5  common law tort remedy. A plaintiff need not allege the elements of fraud because the statute

6  has already defined the wrongful behavior. For similar reasons, the Fourth Circuit concluded

7  that neither California nor Maryland's anti-spam statutes were preempted despite neither one

8  requiring pleading or proof of the elements of fraud. *Beyond Sys., Inc. v. Kraft Foods, Inc*.,

9  777 F.3d 712, 717 (4th Cir. 2015) (citing *Omega*, 469 F.3d 348). Looking at Maryland's statute,

10  the court found that the state appellate court's earlier conclusion that violations of the anti-spam

11  statute, "like violations of the Consumer Protection Act," impose liability for wrongful conduct

12  similar to tort, was sufficient to avoid preemption. *Id*. at 717. Turning to California's statute, the

13  Fourth Circuit likewise noted that (like *Brown*), a state appellate court "limit[ed] the application

14  of California's anti-spam law to deceptive emails" and therefore was not preempted. *Id.* (quoting

15  *Hypertouch Inc. v. ValueClick, Inc.*, 123 Cal. Rptr. 3d 8 (Cal. App. 2011)). The *Hypertouch* court

16  had already held California's anti-spam law "dispenses with many of the elements associated

17  with common law fraud." *Hypertouch*, 123 Cal. Rptr. 3d. These courts rejected FullBeauty's

18  proposed rule here that the elements of fraud must be pled to avoid preemption. This Court, too,

19  made a similar finding when concluding a plaintiff had Article III standing when making a

20  CEMA claim: "[t]he harms resulting from deceptive commercial e-mails resemble the type of

21  harms remedied by nuisance or fraud actions." *Harbers v. Eddie Bauer*, *LLC*,

22  415 F. Supp. 3d 999, 1008 (W.D. Wash. 2019).[4]

23

24      [4] CEMA's requirement of falsity or deception (i.e., wrongdoing) distinguishes FullBeauty's cited authority. Dkt. 25 at 9 (citing *Kleffman v. Vonage Holdings Corp*., 2007 WL 1518650, at *2-3 (C.D. Cal.

25  May 23, 2007)). *Kleffman* addressed missing information in the email sender line, while the plaintiff conceded the sender line "literally and truthfully" identified defendant as sender and made no allegations of false or misleading statements. 2007 WL 1518650, at *2. This Court should also decline to follow the

26  three-page unpublished opinion from *Davison Design & Dev. Inc. v. Riley*, No. C 11-2970 PJH,

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - 7
(2:25-cv-1141-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

### 3. Applying Rule 9(b)'s heightened pleading standards is inconsistent with the CPA

A CEMA subject-line provision violation is a per se CPA violation. Wash. Rev. Code § 19.190.030(1)(b). A CPA claim is not a fraud-based cause of action: "[t]he CPA significantly differs from traditional common law standards of fraud and misrepresentation." *Deegan v. Windermere Real Est./Ctr.-Isle, Inc.*, 391 P.3d 582, 587 (Wash. App. 2017). Thus, Rule 9(b) is inapplicable to both the CPA and CEMA. *Gordon v. Impulse Mktg. Grp., Inc.*, 375 F. Supp. 2d 1040, 1048 (E.D. Wash. 2005) (explaining a claim under CEMA and CPA did not sound in fraud because the claims required different elements and holding CEMA claims "do not trigger the heightened pleading requirements of Rule 9(b)."). Indeed, the elements and burden of proof are materially different between CPA claims and fraud.[5] Further, the CPA must be liberally construed to protect consumers. Wash. Rev. Code § 19.86.920. Applying fraud standards to a CPA claim conflicts with the liberal construction mandate. Indeed, no Washington appellate court has ever held that a CPA claim (whether direct or per se) sounds in fraud or has required a heightened fraud pleading standard.

FullBeauty's citation to three Ninth Circuit cases applying the Rule 9(b) fraud pleading standard is unavailing. Dkt. 25 at 11 (citing *Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1161 (9th Cir. 2009); *Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*, 998 F.3d 397, 404

---

2013 WL 1222691, at *1 (N.D. Cal. Mar. 25, 2013). Despite correctly identifying the caselaw on preempting statutes prohibiting mere "technical" errors, the *Davison* court nevertheless failed to examine CAN-SPAM's preemption clause's plain language before reaching the broad and conclusory holding that a plaintiff must bring a "claim for fraud" to avoid preemption. This threadbare conclusion was wrongly decided and not binding on this Court.

[5] A private CPA violation requires five elements, *Panag v. Farmers Ins. Co. of Washington*, 204 P.3d 885, 889 (Wash. 2009), while fraud has nine, *Stieneke v. Russi*, 190 P.3d 60, 69-70 (Wash. App. 2008) (quotation omitted). A CPA violation (and, thus, a CEMA violation) is established with the standard civil evidentiary burden of 'preponderance of the evidence,' while fraud is subject to the higher "clear, cogent, and convincing" burden. *E.g.*, *Baertschi v. Jordan*, 413 P.2d 657, 660 (Wash. 1966) (fraud claim); *State Farm Fire & Cas. Co. v. Huynh*, 962 P.2d 854, 863 (Wash. App. 1998) (fraud and CPA claims). Federal courts can impose pleading standards, but they cannot add elements to state law claims nor change the substantive evidentiary burdens of state law claims as FullBeauty tacitly urges. *See, e.g.*, *Martins v. Vermont Mut. Ins. Co.*, 92 F.4th 325, 328 (1st Cir. 2024) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - 8
(2:25-cv-1141-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

(9th Cir. 2021); *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007)). Each case relies on a principle from *Vess v. Ciba-Geigy Corp. USA*, that federal Rule 9(b) standards can apply to state law claims.[6] 317 F.3d 1097, 1103-04 (9th Cir. 2003). The *Vess* court, however, was clear that "Rule 9(b)'s heightened pleading requirements" applied "only to 'averments' of fraud supporting a claim" or to state law claims that "rely entirely" on a "unified course of fraudulent conduct." *Id*. Where, as here, allegations are not focused on "circumstances constituting fraud" then Rule 9(b) "does not require that allegations supporting a claim be stated with particularity." *Id*. at 1104. *Vess*' application of Rule 9(b) to state causes of action relating to fraud is thus inapplicable here.

      *Vess'* progeny are likewise inapt. In *Rubke*, the plaintiffs asserted actual fraud claims under the Securities Exchange Act and the Securities Act, both of which require showing that misrepresentations caused losses asserted. *Rubke*, 551 F.3d at 1158, 1161. The Ninth Circuit applied Rule 9(b)'s pleading standards to the Securities Act claim where the "complaint employ[ed] the exact same factual allegations to allege" those violations "as it uses to allege fraudulent conduct" under the Exchange Act, such that the court could "assume" the Securities Act claim "sounds in fraud." *Id*. at 1161. Similarly, in *Irving Firemen's Relief & Ret. Fund*, the court dismissed a securities fraud claim under California Corporations Code, noting that like the Securities Exchange Act section discussed in *Rubke*, the federal law the California codes were premised upon required proof of loss causation and that plaintiff failed adequately to plead that element. 998 F.3d at 401, 405-410. Meanwhile, *Swartz* applied Rule 9(b) to dismiss a complaint

---

[6] Some courts within the Western District of Washington have relied upon *Vess* to apply Rule 9(b) pleading standards to CPA claims that alleged deception. *See, e.g.*, *REX - Real Estate Exch. Inc. v. Zillow Inc.*, No. C21-312 TSZ, 2021 WL 3930694, at *8 (W.D. Wash. Sept. 2, 2021) (finding Rule 9(b) applied where "complaint also alleges facts that necessarily constitute fraud"). Deception under the CPA, however, is not fraud and no Washington appellate court has ever held as much. *See State v. State Credit Ass'n, Inc.*, 657 P.2d 327, 330 (Wash. App. 1983) (stating "the concept of 'unfair or deceptive acts or practices' proscribed by [Wash. Rev. Code §] 19.86.020"—the very claim advanced by Appellant here—"has no parallel in the law as it existed at the time [the Washington] constitution was adopted.") (cleaned up) *review granted, cause remanded sub nom. State v. State Credit Ass'n*, 689 P.2d 403 (Wash. 1984).

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - 9
(2:25-cv-1141-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

1    that raised common law fraud claims against multiple defendants without alleging their

2    individual misconduct. 476 F.3d at 764.[7] Every case FullBeauty relies on for applying a fraud

3    pleading standard addressed a fraud claim or a statutory equivalent to a fraud claim. That is not

4    the case here.

**4.    CEMA complements CAN-SPAM**

6    A preemption analysis is "guided by the oft-repeated comment that the purpose of

7    Congress is the ultimate touchstone in every preemption case." *Virtumundo*, 575 F.3d at 1060

8    (cleaned up). Here, CEMA's subject line provision aligns with Congress' purpose in enacting

9    CAN-SPAM—a purpose which would not be served by preempting or narrowing CEMA.

10   Congress enacted CAN-SPAM in 2003 to "curb the negative consequences of spam and

11   spamming practices without stifling legitimate commerce." *Id*. at 1045. CAN-SPAM's

12   prohibition on deceptive or misleading information in email subject lines is one means of

13   accomplishing this purpose. 15 U.S.C. § 7704(a)(2). CEMA's subject line provision supports

14   this same goal by prohibiting "false or misleading" information in email subject lines. Wash.

15   Rev. Code § 19.190.020(1)(b). Congress chose to expressly save such state law claims regarding

16   "falsity or deception" from preemption without requiring plaintiffs to plead "fraud." As one

17   circuit court observed, Congress "is certainly familiar with the word 'fraud'" but chose not to

18   use it even though it "utilized the word 'fraud' in the very next subsection but not in the savings

19   clause." *Asis Internet Servs. v. Consumerbargaingiveaways, LLC*, 622 F. Supp. 2d 935, 942

20   (N.D. Cal. 2009) (citing 15 U.S.C. § 7707(b)(2)).

21   Finally, FullBeauty's argument that it is too "burdensome," "extremely difficult," and

22   would undermine Congress' purpose of creating uniform commercial email regulations for it to

---

[7] The *Swartz* court also dismissed a CPA claim—not based on Rule 9(b), but because the fraud scheme at issue (which targeted individuals attempting to shield millions from captain gains taxes) was unlikely to deceive a substantial number of Washingtonians. 476 F.3d at 761.

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - 10
(2:25-cv-1141-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

comply with CEMA and CAN-SPAM is not credible. Dkt. 25 at 5, 9-10.[8] It is neither burdensome nor extremely difficult to refrain from putting "false or misleading" information in email subject lines (as CEMA requires) or to refrain from using subject lines "likely to mislead a recipient" (as CAN-SPAM requires). Requiring higher, more stringent pleading standards for claimants does not serve any congressional purpose. *Asis Internet Servs. v. Subscriberbase Inc.*, No. 09-3503 SC, 2010 WL 1267763, at *11-12 (N.D. Cal. Apr. 1, 2010) (stating the focus of CAN-SPAM is on the "behavior of advertisers," and "adding the traditional fraud elements of reliance and damages does not add anything to Congress's efforts to create a uniform system of regulation governing email advertisements").

**B.    CEMA Does Not Violate the Dormant Commerce Clause[9]**

The Commerce Clause of the United States Constitution empowers Congress "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. art. I, § 8, cl. 3. "Reading between the Constitution's lines," the Supreme Court has held that "the Commerce Clause not only vests Congress with the power to regulate interstate trade; the Clause also contains a further, negative command" that forbids enforcement "of certain state economic regulations even when Congress has failed to legislate on the subject." *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 368 (2023) (cleaned up). Courts refer to "[t]his 'negative' aspect of the Commerce Clause" as the "dormant Commerce Clause." *Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 588 U.S. 504, 515 (2019) (quotation omitted). The Supreme Court has cautioned federal courts to utilize "extreme caution" before deploying the "implied authority" of the dormant Commerce Clause. *Nat'l Pork Producers*, 598 U.S. at 390

---

[8] FullBeauty also implies CEMA should be preempted because Congress crafted CAN-SPAM "to allow only selective private enforcement." Dkt. 25 at 5. This is no reason to narrow or preempt CEMA. *See Wigod v. Wells Fargo Bank*, *N.A.*, 673 F.3d 547, 581 (7th Cir. 2012) (recognizing that "[t]he absence of a private right of action from a federal statute provides no reason to dismiss a claim under a state law just because it refers to or incorporates some element of the federal law.").

[9] The State joins in Plaintiffs' arguments regarding the dormant Commerce Clause. Dkt. 27 at 12-20.

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - 11
(2:25-cv-1141-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

1    (internal quotation marks omitted). "Preventing state officials from enforcing a democratically

2    adopted state law in the name of the dormant Commerce Clause is a matter of 'extreme delicacy,'

3    something courts should do only 'where the infraction is clear.'" *Id.* (quoting *Conway v.*

4    *Taylor's Ex'r*, 66 U.S. 603, 634 (1862)).

5        State laws only violate the dormant Commerce Clause when they discriminate in favor

6    of their *own* residents and economic interests, to the detriment of out-of-state residents or

7    interests. *See Int'l Franchise Ass'n, Inc. v. City of Seattle*, 803 F.3d 389, 399 (9th Cir. 2015).

8    This is because the "primary purpose of the dormant Commerce Clause is to prohibit statutes

9    that discriminate against interstate commerce by providing benefits to in-state economic interests

10   while burdening out-of-state competitors." *Ass'n des Éleveurs de Canards et d'Oies du Québec*

11   *v. Harris*, 729 F.3d 937, 947 (9th Cir. 2013) (cleaned up).

12       CEMA has absolutely nothing to do with local economic protectionism. CEMA is a valid

13   exercise of the State's police powers, and it evenhandedly prevents misleading commercial email

14   messages sent to or from Washington without prior consent. FullBeauty's dormant Commerce

15   Clause argument fails.

16       **1.    The U.S. Supreme Court rejected FullBeauty's extraterritoriality argument**
           **in 2023**

17

18       FullBeauty's constitutional challenge is based on the idea that a state statute that may, in

19   some situations, have practical effects outside the state's borders is a violation of the dormant

20   Commerce Clause. *See* Dkt. 25 at 16. In support, FullBeauty cites *Healy v. Beer Institute, Inc.*,

21   and a handful of out-of-jurisdiction district court cases relying on *Healy*.[10] 491 U.S. 324 (1989).

22   But FullBeauty's reliance on these cases is misplaced, because in *National Pork Producers*, the

23   United States Supreme Court unanimously rejected the idea that *Healy* stands for the almost per

24   se rule against extraterritoriality that FullBeauty advocates for here. 598 U.S. at 368. FullBeauty

25

26       [10] Plaintiff discussed these cases in her opposition to FullBeauty's motion to dismiss. Dkt. 27
     at 16-18. The State need not repeat the reasons those cases are inapposite here.

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - 12
(2:25-cv-1141-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

1    fails to discuss *National Pork Producers*' analysis of *Healy* and never acknowledges that it is

2    dispositive of its arguments.[11]

3       There is no blanket rule against state statutes with extraterritorial effects. If there was

4    such a rule, it is hard to imagine how the interconnected modern economy would continue to

5    function. *Nat'l Pork Producers*, 598 U.S. at 374-75 ("In our interconnected national

6    marketplace, many (maybe most) state laws have the 'practical effect of controlling'

7    extraterritorial behavior."). It is true that historically, courts observed that the extraterritorial

8    application of certain state laws raised dormant Commerce Clause concerns. In *Healy*, the United

9    States Supreme Court noted that in some situations "a statute that directly controls commerce

10    occurring wholly outside the boundaries of a state exceeds the inherent limits of the enacting

11    State's authority." 491 U.S. at 336. Under *Healy*, then, such legislation may have the "practical

12    effect . . . [of] control[ing] conduct beyond the boundaries of the State." *Id.* In the years that

13    followed, some courts read *Healy* to mean that in addition to the classic tests for dormant

14    Commerce Clause challenges (*see* Part B(4), *infra*), there existed a separate rule prohibiting

15    statutes with extraterritorial effects. *See, e.g.*, *United Res. Sys., Inc. v. Wilson*,

16    614 F. Supp. 3d 243, 256 (D.S.C. 2022).

17       In 2023, however, the United States Supreme Court clarified that extraterritorial effects

18    alone do not violate the dormant Commerce Clause. Crucial for the instant motion to dismiss,

19    the Court squarely rejected the argument that *Healy* stands for the *per se* proposition that laws

20    with extraterritorial effects violate the dormant Commerce Clause. Concluding that "petitioners

21    read too much into too little," the Court explained that the challenged statutes in *Healy* and other

22    extraterritoriality cases "had a *specific* impermissible 'extraterritorial effect'—they deliberately

23    'prevent[ed out-of-state firms] from undertaking competitive pricing' or 'deprive[d] businesses

24    and consumers in other States of 'whatever competitive advantages they may possess.'"

---

[11] FullBeauty's brief curiously cites only the Ninth Circuit's opinion in *National Pork Producers*, and even then, only in passing. *See* Dkt. 25 at 12, 16.

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - 13
(2:25-cv-1141-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

1    *Nat'l Pork Producers*, 598 U.S. at 373-374 (quoting *Healy*, 491 U.S. at 338-339). Although

2    several Justices wrote separately, "the Court unanimously disavow[ed] petitioners' 'almost

3    per se' rule against laws with extraterritorial effects." *Id.* at 389 n.4; *see also id.* at 394

4    (Roberts, C.J., concurring in part); *id.* at 403, n.1 ("The Court also unanimously rejects plaintiffs'

5    separate claim under *Healy* . . . .") (Kavanaugh, J., concurring in part).

6           In rejecting an almost per se rule against extraterritoriality, the Court clarified that it did

7    not "trivialize the role territory and sovereign boundaries play in our federal system." *Nat'l Pork*

8    *Producers*, 598 U.S. at 375. Instead, it explained that other express provisions of the

9    Constitution, including the Due Process Clause and the Full Faith and Credit Clause, may be

10   relevant to the analysis. *Id.* at 375-76 (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 818

11   (1985)). In this case, even those provisions support CEMA's extraterritorial application to

12   Washington residents temporarily outside the state's borders, because Washington undoubtedly

13   has a state interest in protecting its consumers, even those who are temporarily outside the state.

14   *See Phillips Petroleum Co.*, 472 U.S. at 818 (under the Due Process Clause, a state may apply

15   its law as long as it has "a significant contact or significant aggregation of contacts, creating state

16   interests, such that choice of its law is neither arbitrary nor fundamentally unfair"); *Nat'l Pork*

17   *Producers*, 598 U.S. at 376 (observing that a State's extraterritorial reach ends at "acts

18   committed 'outside [the first State's] jurisdiction' that are not 'intended to produce [or that do

19   not] produc[e] detrimental effects within it") (quoting *Strassheim v. Daily*, 221 U.S. 280, 285

20   (1911)). Courts do not strike down laws under these provisions unless the challenged law

21   governs extraterritorial conduct involving individuals "with *no* connection to the State."

22   *Nat'l Pork Producers*, 598 U.S. at 376 n.1 (distinguishing *Edgar v. MITE Corp.*, 457 U.S. 624

23   (1982)). Accordingly, they are vastly different from the CEMA, which protects Washington

24   consumers.

25

26

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - 14
(2:25-cv-1141-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

1    **2.    FullBeauty's facial challenge to CEMA fails *ab initio***

2    FullBeauty argues that CEMA is facially unconstitutional. *See, e.g.*, Dkt. 25 at 19:15-16.

3    FullBeauty, however, cannot meet its incredibly high burden to establish this. To succeed on its

4    facial challenge under the dormant Commerce Clause, FullBeauty "must meet a high burden of

5    proof; it must establish that no set of circumstances exists under which [CEMA] would be valid.

6    The fact that [CEMA] might operate unconstitutionally under some conceivable set of

7    circumstances is insufficient to render it wholly invalid." *S.D. Myers, Inc. v. City & Cnty. of

8    San Francisco*, 253 F.3d 461, 467 (9th Cir. 2001) (internal quotation marks omitted). Because

9    of this high burden, this Court must "construe [CEMA] narrowly and resolve any ambiguities in

10   favor of the interpretation that most clearly supports constitutionality." *Id.* at 468.

11   FullBeauty begins its facial challenge to CEMA by relying upon the wrong standard (the

12   one for First Amendment challenges), i.e., whether a statute has a "substantial number" of

13   unconstitutional applications "judged in relation to [its] plainly legitimate sweep". Dkt. 25

14   at 19:16-19 (citing *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442,

15   449 [sic] n.6 (2008)). Outside of the First Amendment context, as here, a facial challenge like

16   FullBeauty's can only succeed where the challenger establishes there is "no set of circumstances

17   exists under which the Act would be valid" and that the law is unconstitutional in "all of its

18   applications." *Id*. at 449 (quotation omitted).

19   FullBeauty's other cited authority for its facial challenge, *National Shooting Sports

20   Foundation v. Bonta*, confirms that the rule for such a challenge is that a party must show that a

21   law is "unconstitutional in all of its applications" even after being construed narrowly.

22   718 F. Supp.    3d    1244,    1256    (S.D.    Cal.    2024),    *reconsideration    denied*,

23   No. 23-CV-0945-AGS-KSC, 2025 WL 1012326 (S.D. Cal. Mar. 31, 2025). Because FullBeauty

24   does not attempt to meet that standard, *National Shooting Sports Foundation* has no bearing

25   here.

26

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - 15
(2:25-cv-1141-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

### 3. FullBeauty does not allege and cannot establish discrimination under the dormant Commerce Clause

The threshold question in the dormant Commerce Clause inquiry is whether the law is discriminatory. *See Rocky Mtn. Farmers Union v. Corey*, 730 F.3d 1070, 1087 (9th Cir. 2013). In this context, the term "discrimination" has a specific meaning: "economic protectionism, or discrimination, 'simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.'" *Rocky Mtn. Farmers Union*, 730 F.3d at 1087 (citation omitted). Thus, "[m]ere differential treatment of in-state and out-of-state interests is insufficient to establish discrimination. Rather, there must be some economic benefit to in-state interests or some economic burden on out-of-state interests." *Mitchell v. Atkins*, 483 F. Supp. 3d 985, 997 (W.D. Wash. 2020), *vacated and remanded on other grounds by Michell v. Atkins*, No. 20-35827, 2022 WL 17420766 (9th Cir. Dec. 2, 2022) (citation omitted).

It is well established that the "party challenging the statute bears the burden of showing discrimination." *Black Star Farms LLC v. Oliver*, 600 F.3d 1225, 1230 (9th Cir. 2010). Despite this, FullBeauty addresses discrimination only in passing. FullBeauty's brief does not explain how CEMA could benefit Washington economic interests at the expense of out-of-state interests. FullBeauty has thus waived argument on this issue. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 n.2 (9th Cir. 2003) (concluding an issue not argued with specificity in briefing will not be addressed); *Heft v. Moore*, 351 F.3d 278, 285 (7th Cir. 2003) ("The failure to cite cases in support of an argument waives the issue. . . .").[12]

Even if FullBeauty has not waived the issue, it cannot establish discrimination. Discrimination under the dormant Commerce Clause is not an abstract notion comparing generic economic interests. Rather, "any notion of discrimination assumes a comparison of substantially

---

[12] FullBeauty instead focuses upon the concept of extraterritoriality. Dkt. 25 at 23. But, as discussed in Part B(1), *supra*, the so-called "extraterritoriality doctrine" merely "typifies the familiar concern with preventing purposeful discrimination against out-of-state economic interests." *Nat'l Pork Producers*, 598 U.S. at 371.

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - 16
(2:25-cv-1141-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

similar entities." *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 298 (1997); *Black Star Farms*, 600 F.3d at 1230 ("Differential treatment must be as between persons or entities who are similarly situated.") (quotation omitted). Thus, to establish discrimination under the dormant Commerce Clause, FullBeauty (an out-of-state company) must establish that CEMA economically disadvantages it compared to a substantially similar commercial email messenger located in Washington. FullBeauty's briefing contains no such analysis and in any event, there is no benefit to in-state commercial email sender at the expense of out of state commercial email sender. It is just as illegal for a Washington company to send an unpermitted or misleading commercial email message to a Washington resident without prior authorization as it is for an out-of-state company to send the same email. Wash. Rev. Code § 19.190.020(1)(b) (prohibiting any "person" from sending misleading commercial emails).

### 4. FullBeauty cannot establish a significant burden on interstate commerce nor that any such burden outweighs CEMA's benefits to consumers

Because CEMA is a non-discriminatory law, it is presumptively valid unless any burden on interstate commerce is "'clearly excessive in relation to the putative local benefits.'" *Sullivan v. Oracle Corp.*, 662 F.3d 1265, 1271 (9th Cir. 2011) (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)). This weighing of the burden and benefits of a non-discriminatory law is often referred to as "*Pike* balancing." *See Nat'l Pork Producers*, 598 U.S. at 393 (Barrett, J., concurring). As the Ninth Circuit has recognized, "only a small number of cases invalidating laws under the dormant Commerce Clause have involved laws that were genuinely nondiscriminatory but still imposed a clearly excessive burden on interstate commerce." *Rosenblatt v. City of Santa Monica*, 940 F.3d 439, 452 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 2762 (2020) (cleaned up). *Pike* balancing "does not invite courts to second-guess legislatures by estimating the probable costs and benefits of the statute." *Brown & Williamson Tobacco Corp. v. Pataki*, 320 F.3d 200, 209 (2d Cir. 2003). Rather, the Court must "presume the law serves the [state's] legitimate interests." *Rosenblatt*, 940 F.3d at 452. FullBeauty, as the party

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - 17
(2:25-cv-1141-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

1    challenging CEMA, bears the burden on this issue. *Id*.; *Kleenwell Biohazard Waste & Gen.*

2    *Ecology Consultants, Inc. v. Nelson*, 48 F.3d 391, 399 (9th Cir. 1995) (stating party challenging

3    law must "establish that the burdens that the regulation imposes on interstate commerce clearly

4    outweigh the local benefits arising from it").

5        FullBeauty attempts to meet its burden by suggesting hypotheticals related to the

6    "extreme" difficulties of running to ground the residency of every email address it contacts,

7    potential damage awards, and pressure to settle "meritless lawsuits." Dkt. 25 at 17-18. The

8    solution to each of these hypothetical burdens, however, is simply to not send thousands of

9    emails with false or misleading subject lines. This simple solution, according to FullBeauty "falls

10   flat" because the "strictest state's standard" should not apply as "nationwide law." Dkt. 25 at 18

11   (citing *State v. Heckel*, 24 P.3d 404 (Wash. 2001), *cert. denied*, 534 U.S. 997 (2001) (*Heckle I*)).

12   This is not what *Heckle I* stands for, though. There, the Washington State Supreme Court held

13   that CEMA's prohibition of misleading commercial email messages "does not unduly burden

14   interstate commerce." *Heckel I*, 24 P.3d at 406.[13] CEMA does not create a uniquely strict

15   mandate for companies like FullBeauty: CAN-SPAM already prohibits false or misleading email

16   subject lines. CEMA does the same and therefore should not present any significant burden.[14]

17       Because FullBeauty has failed to establish such a burden, *Pike* balancing is unnecessary.

18   The plurality opinion in *National Pork Producers* "held that courts should not even attempt to

19   quantify a state law's local 'benefits' or compare those benefits to the law's costs unless a

20   challenger has first shown that the law inflicts 'substantial burdens' on interstate commerce[.]"

21   *Truesdell v. Friedlander*, 80 F.4th 762, 774 (6th Cir. 2023) (emphasis added) (citing 143 S. Ct.

22

23       [13] The *Heckel I* court similarly recognized that extraterritoriality may implicate jurisdictional questions, but that those questions are unrelated to the dormant Commerce Clause analysis and should be analyzed under a separate framework. *Heckel I*, 24 P.3d at 412. *Heckel I* was also decided before

24   *National Pork Producers* clarified the relationship between extraterritoriality and the dormant Commerce Clause.

25       [14] As noted by Plaintiff, FullBeauty can also readily determine the residency of email addresses and exclude Washingtonians' addresses from deceptive marketing campaigns should FullBeauty wish to

26   run those campaigns in the rest of the country. Dkt. 27 at 20.

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - 18
(2:25-cv-1141-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

1    at 1161-64) *cert. denied*, 144 S. Ct. 1344 (2024), and *cert. denied*, 144 S. Ct. 1346 (2024).

2    Accordingly, because FullBeauty fails to establish such substantial burdens on interstate

3    commerce, this Court does not need to address CEMA's local benefits.

4        Should the Court decide to complete the *Pike* balancing test, however, it bears repeating

5    that "*Pike* discusses whether the burden on interstate commerce is 'clearly excessive in relation

6    to the *putative* local benefits.'" *Nat'l Ass'n of Optometrists & Opticians v. Harris*,

7    682 F.3d 1144, 1155 (9th Cir. 2012) (quoting *Pike*, 397 U.S. at 142) (emphasis in original). *Pike*

8    "does not mention actual benefits as part of the test" for assessing a dormant Commerce Clause

9    violation. *Id.* The putative benefits of CEMA are plain: avoiding the harassment of and potential

10   cost to consumers by unwanted commercial email messages, which are "matters vitally affecting

11   the public interest." Wash. Rev. Code § 19.190.030(3). This is exactly what the Washington

12   Legislature stated when passing the law:

13   
14   
15   
16   
17
> The legislature finds that the volume of commercial electronic mail is growing, and the consumer protection division of the attorney general's office reports an increasing number of consumer complaints about commercial electronic mail. . . The legislature seeks to provide some immediate relief to interactive computer service providers by prohibiting the sending of commercial electronic mail messages that . . . misrepresent the message's point of origin, or contain untrue or misleading information in the subject line. . . .

18   Laws of 1998, ch. 149, § 1 (former Wash. Rev. Code § 19.190.005). And "[c]ourt[s] will assume

19   that the objectives articulated by the legislature are actual purposes of the statute, unless an

20   examination of the circumstances forces [courts] to conclude that they could not have been a

21   goal of the legislation." *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 463 n. 7 (1981)

22   (internal quotation omitted).

23        Additionally, a misleading commercial email message prohibited by CEMA "is an unfair

24   or deceptive act in trade or commerce and an unfair method of competition for the purpose of

25   applying the consumer protection act[.]" Wash. Rev. Code § 19.190.030(3). Both this Court and

26   the Supreme Court have recognized that states have an important interest in protecting the public

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - 19
(2:25-cv-1141-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

from unfair and deceptive business practices. *See, e.g.*, *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 460 (1978) (citing the "general interest in protecting consumers and regulating commercial transactions" in stating that "[t]he state interests implicated in this case are particularly strong"); *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 651 (1985) (recognizing "the state's interest in preventing deception of consumers"); *In re Park W. Galleries, Inc.*, No. MDL 09-2076RSL, 2010 WL 56044, at *4 (W.D. Wash. Jan. 5, 2010) (recognizing that "the protection of consumers" "advances legitimate state interests" in the dormant Commerce Clause arena). In sum, even under the *Pike* balancing test, CEMA does not violate the dormant Commerce Clause.

## C.      CEMA's Damages Provision is Constitutional

In a footnote, FullBeauty argues that the "damages award sought by Plaintiff under CEMA is also unconstitutional as unduly punitive" because "Plaintiff seeks statutory damages of $500 per email and alleges she received thousands of emails while suffering no actual monetary injury, rendering the requested damages unconstitutional." Dkt. 25 at 12 n.4 (citing *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1120 (9th Cir. 2022)). The Court need not consider this argument. *See Glave v. Glebe*, No. C11-5529-RJB-JRC, 2012 WL 761146, at *3 (W.D. Wash. Jan. 26, 2012) (quoting a Washington State court determination that the "passing treatment of [a] constitutional issue does not merit review") (citation omitted). In any event, this argument is premature at the motion to dismiss stage, particularly in a putative class action where no class has been certified, no liability found, and the number of violations is not set.

Even assuming, *arguendo*, the Court needs to reach the constitutionality of CEMA's damages provisions, FullBeauty's argument fails on the merits. The Washington State Supreme Court has already assessed the provision, holding that "[t]here is nothing absurd about CEMA's focus on subject lines or CEMA's allocation of statutory damages to falsity in the subject lines." *Brown*, 567 P.3d at 45. *Wakefield*—which assessed a $925,220,000 damage award pursuant to an "exacting" test only applied "in certain extreme circumstances"—does not undermine this

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - 20
(2:25-cv-1141-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

holding. 51 F.4th at 1116, 1120-24. FullBeauty does not even attempt to meet this "exacting"

assessment to demonstrate unconstitutionality.

## IV.     CONCLUSION

The State respectfully requests that the Court deny FullBeauty's constitutional challenges

to CEMA.

DATED this 31st day of October, 2025.

NICHOLAS W. BROWN
Attorney General

*/s/ Claire McNamara*

CLAIRE MCNAMARA, WSBA#50097
BOB HYDE, WSBA #33593
BEN BRYSACZ, WSBA #54683
Assistant Attorneys General
Attorneys for Plaintiff-Intervenor
State of Washington
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
Claire.McNamara@atg.wa.gov
Ben.Brysacz@atg.wa.gov
Robert.Hyde@atg.wa.gov
206-464-7744

*I certify that this memorandum contains 7,169 words, in compliance with the Local Civil Rules.*

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS - 21
(2:25-cv-1141-RSM)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744