The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JULIE ANNE KEMPF, on behalf of herself and all others similarly situated,

                    Plaintiff,

        and

STATE OF WASHINGTON,

                    Plaintiff-Intervenor,

        v.

FULLBEAUTY BRANDS OPERATIONS, LLC, an Indiana limited liability company,

                    Defendant.

No. 2:25-cv-01141-RSM

FULLBEAUTY BRANDS OPERATIONS, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Oral Argument Requested*

NOTED ON MOTION CALENDAR:
November 14, 2025[1]

---

[1] Based on briefing schedule set pursuant to the parties' Stipulated Order. *See* Dkt. 29.

FULLBEAUTY'S REPLY ISO
MOT. TO DISMISS FIRST AM. COMPL.
(2:25-cv-01141-RSM)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

**TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................................... 1

II.     ARGUMENT ............................................................................................................ 2

        A.      CAN-SPAM Preempts Plaintiff's Claims. ................................................... 2

                1.      CEMA's "false or misleading" standard does not save it from
                        preemption. ...................................................................................... 2

                2.      Plaintiff does not allege materially misleading or otherwise
                        deceptive emails. .............................................................................. 4

                3.      Plaintiff acknowledges that she does not allege reliance or
                        damages. ........................................................................................... 5

                4.      CEMA claims must be pleaded under Rule 9(b)'s heightened
                        pleading standard. ........................................................................... 7

        B.      CEMA Is Invalid to the Extent It Applies to Conduct Wholly Outside of
                Washington. ................................................................................................. 8

                1.      CEMA impermissibly seeks to regulate emails sent and received
                        wholly outside of Washington. ........................................................ 8

                2.      CEMA is facially invalid because it directly regulates transactions
                        occurring wholly outside of Washington. ...................................... 10

                3.      CEMA is invalid as applied because Plaintiff does not adequately
                        allege that she was located in Washington when she received the
                        challenged emails. .......................................................................... 11

        C.      CEMA Excessively Burdens Interstate Commerce. ................................... 12

        D.      Plaintiff Fails to Adequately Allege That FullBeauty Knew or Had Reason
                to Know that Plaintiff was a Washington Resident. .................................. 14

        E.      Plaintiff Fails to Adequately Allege that FullBeauty's Sale Extensions
                were Predetermined. .................................................................................. 15

        F.      Plaintiff's CPA Claim Fails Because It Does Not Allege a Single CEMA
                Violation. ................................................................................................... 17

III.    CONCLUSION ...................................................................................................... 17

FULLBEAUTY'S REPLY ISO
MOT. TO DISMISS FIRST AM. COMPL. - i
(2:25-cv-01141-RSM)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adomitis ex. rel. U.S. v. San Bernardino Mountains Cmty. Hosp. Dist.*,
816 F. App'x 64 (9th Cir. 2020) ................................................................................16

*Asis Internet Servs. v. Subscriberbase Inc.*,
2010 WL 1267763 (N.D. Cal. Apr. 1, 2010) ....................................................4, 5, 6

*Ass'n for Accessible Meds. v. Bonta*,
766 F. Supp. 3d at 1033 ........................................................................................9, 11

*Ass'n for Accessible Meds. v. Bonta*,
766 F. Supp. 3d at 1033–34 ......................................................................................10

*Ass'n for Accessible Meds. v. Ellison*,
704 F. Supp. 3d 947 (D. Minn. 2023), *aff'd*, 140 F.4th 957 (8th Cir. 2025) .............9

*Brown v. Old Navy, LLC*, 4 Wn.3d 580 (2025) ................................................................4

*Camreta v. Greene*,
563 U.S. 692 (2011)....................................................................................................8

*Eclectic Properties East, LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014) ..............................................................................15, 17

*Gordon v. Impulse Marketing Group, Inc.*,
375 F. Supp. 2d 1040 (E.D. Wash. 2005).................................................................7, 8

*Gordon v. Virtumundo, Inc.*,
2006 WL 3873368 (W.D. Wash. Dec. 8, 2006) ........................................................8

*Gordon v. Virtumundo, Inc.*,
575 F.3d 1040 (9th Cir. 2009) ........................................................................ *passim*

*In re Century Aluminum Co. Secs. Litig.*,
729 F.3d 1104 (9th Cir. 2013) ..................................................................................16

*In re Gilead Scis. Secs. Litig.*,
536 F.3d 1049 (9th Cir. 2008) ..................................................................................11

*Integra Med Analytics LLC v. Providence Health & Servs.*,
854 F. App'x 840 (9th Cir. 2021) ..............................................................................16

*Iowa Pork Producers Ass'n v. Bonta*,
2024 WL 3158532 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 2866 (2025)................9

FULLBEAUTY'S REPLY ISO
MOT. TO DISMISS FIRST AM. COMPL. - ii
(2:25-cv-01141-RSM)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Kleffman v. Vonage Holdings Corp.*,
2007 WL 1518650 (C.D. Cal. 2007), *aff'd*, 387 F. App'x 696 (9th Cir. 2010)........................6

*LHF Prods., Inc. v. Doe 1*,
2017 WL 714227 (W.D. Wash. Feb. 23, 2017) (Martinez, J.) ................................................16

*Malibu Media, LLC v. Does*,
2012 WL 2921227 (S.D. Cal. July 17, 2012) ........................................................................14

*N. Pac. Plywood, Inc. v. Access Rd. Builders, Inc.*,
29 Wn. App. 228 (1981) ..........................................................................................................5

*Nat'l Shooting Sports Found. v. Bonta*,
718 F. Supp. 3d 1244 (S.D. Cal. 2024) (citation modified), *reconsideration denied*, 2025 WL
1012326 (S.D. Cal. Mar. 31, 2025)....................................................................................8, 10

*NCAA v. Miller*,
10 F.3d 633 (9th Cir. 1993) ...................................................................................................13

*Ne. Bancorp, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
472 U.S. 159 (1985)................................................................................................................13

*Omega World Travel, Inc. v. Mummagraphics, Inc.*,
469 F.3d 348 (4th Cir. 2006) .................................................................................................12

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985)................................................................................................................10

*Prudencio v. Midway Importing, Inc.*,
831 F. App'x 808 (9th Cir. 2020) ..........................................................................................16

*Rocky Mountain Farmers Union v. Corey*,
730 F.3d 1070 (9th Cir. 2013) ...............................................................................................12

*Rubke v. Capitol Bancorp Ltd.*,
551 F.3d 1156 (9th Cir. 2009) .................................................................................................8

*S.D. Myers, Inc. v. City & Cnty. of S.F.*,
253 F.3d 461 (9th Cir. 2001) .................................................................................................10

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) ...............................................................................................15

*Stephens v. Omni Ins. Co.*,
138 Wn. App. 151 (2007), *aff'd sub nom. Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27
(2009)....................................................................................................................................4, 5

*Von Gohren v. Pacific National Bank*,
8 Wn. App. 245 (1973) ..........................................................................................................15

FULLBEAUTY'S REPLY ISO
MOT. TO DISMISS FIRST AM. COMPL. - iii
(2:25-cv-01141-RSM)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Wagner v. Spire Vision*,
　2014 WL 889483 (N.D. Cal. Mar. 3, 2014).................................................................................4

*Wakefield v. ViSalus, Inc.*,
　51 F.4th 1109 (9th Cir. 2022) ...............................................................................................12

**Statutes**

15 U.S.C. § 7704(a)(2)..........................................................................................................7, 13

15 U.S.C. § 7707(b)(1) ..............................................................................................................3

RCW 19.190.020(1)(a) ..............................................................................................................3

RCW 19.190.030(1)(b) ..............................................................................................................3

**Other Authorities**

U.S. Const. art. I, § 8, cl. 3......................................................................................................11

FULLBEAUTY'S REPLY ISO
MOT. TO DISMISS FIRST AM. COMPL. - iv
(2:25-cv-01141-RSM)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

## I.    INTRODUCTION

The opposition briefs of Plaintiff Julie Anne Kempf ("Plaintiff") and Plaintiff-Intervener State of Washington (the "State") fail to overcome the defects that Defendant FullBeauty Brands Operations, LLC ("FullBeauty") exposed in Plaintiff's First Amended Complaint ("FAC").

*First*, Plaintiff's purported use of Washington's Commercial Electronic Mail Act ("CEMA") is preempted by the Controlling the Assault of Non-Solicited Pornography and Marketing Act ("CAN-SPAM"), which regulates commercial email nationwide, and displaced the "patchwork" of disparate state statutes with a comprehensive "code of conduct to regulate commercial e-mail messaging practices." *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1047–48, 1062–63 (9th Cir. 2009); 15 U.S.C. § 7707(b)(1). Neither Plaintiff nor the State show that Plaintiff's CEMA allegations fall within CAN-SPAM's narrow preemption exception, which saves only "traditional tort theories such as claims arising from fraud or deception to commercial e-mail communication." *Virtumundo*, 575 F.3d 1040 at 1063. Plaintiff does not allege material misrepresentations, and she does not dispute that she failed to allege reliance or injury or plead with particularity.

*Second*, CEMA is unconstitutional under the dormant Commerce Clause. *National Pork Producers Council v. Ross*, 598 U.S. 356 (2023), addressed only state laws with extra-territorial *effects*. But CEMA *directly regulates* conduct occurring *wholly outside* of Washington, which, under binding Ninth Circuit precedent, is unconstitutional. "The Supreme Court did not curtail the *Baldwin-Healy* line of cases" that FullBeauty relied on in its motion to dismiss. *Ass'n for Accessible Meds. v. Bonta*, 766 F. Supp. 3d 1020, 1033 (E.D. Cal. 2025), *appeal filed*, No. 25-1694 (9th Cir. Mar. 14, 2025). "In light of this," courts in this Circuit still "follow[] the precedent set in *Sam Francis*," *id.*, which makes clear that a state may not regulate transactions occurring wholly outside its borders, even if, like CEMA, the statute relies on a residency hook. *Sam Francis Found. v. Christies, Inc.*, 784 F.3d 1320, 1323 (9th Cir. 2015).

*Third*, as drafted, CEMA's burden on interstate commerce is clearly excessive compared to any putative local benefits in violation of the dormant Commerce Clause.

FULLBEAUTY'S REPLY ISO
MOT. TO DISMISS FIRST AM. COMPL. - 1
(2:25-cv-01141-RSM)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Fourth*, Plaintiff does not adequately allege that FullBeauty knew or had reason to know she was a Washington resident. Instead, she resorts to impermissible speculation, which cannot support a CEMA violation.

*Fifth*, Plaintiff asks the Court to infer—without sufficient factual allegations—that FullBeauty's sale extensions were predetermined. Without this inference, Plaintiff does not allege a CEMA violation with respect to that category of emails because there was no misrepresentation of fact.

*Sixth*, Plaintiff acknowledges that her Washington Consumer Protection Act ("CPA") claim rises or falls with her alleged CEMA violations. *See* Dkt. 27 ("Kempf") at 25–26 (recognizing the "symbiotic relationship" between the statutes). Because she fails to allege a CEMA violation, her CPA claim fails.

As a result, FullBeauty respectfully requests that the Court grant this motion and dismiss the FAC with prejudice.

## II.    ARGUMENT

### A.    CAN-SPAM Preempts Plaintiff's Claims.

The State and Plaintiff's briefs are riddled with references to construing CAN-SPAM's preemption clause narrowly. *E.g.*, Dkt. 33 ("State") at 2–3; Kempf at 8. But *Virtumundo* recognized that "the express language of § 7707(b) demonstrates Congress's intent that the CAN–SPAM Act broadly preempt state regulation of commercial e-mail with limited, narrow exception." *Virtumundo*, 575 F.3d at 1061. Both parties fail to show that Plaintiff's CEMA claim—which fails to allege materiality, injury, or reliance—falls within the "limited, narrow exception" to CAN-SPAM preemption, reserved only for "traditionally tortious or wrongful conduct." *Id.* at 1062.

#### 1.    CEMA's "false or misleading" standard does not save it from preemption.

As an initial matter, Plaintiff and the State each claim that CEMA is not preempted on its face, although the Ninth Circuit has already rejected this argument. CAN-SPAM broadly

FULLBEAUTY'S REPLY ISO
MOT. TO DISMISS FIRST AM. COMPL. - 2
(2:25-cv-01141-RSM)

preempts state laws regulating commercial email, allowing a narrow exception for state laws that "prohibit[] falsity or deception in any portion of a commercial electronic mail message or information attached thereto." 15 U.S.C. § 7707(b)(1). Because CEMA prohibits a broad range of email subject lines—including those with merely "*misleading*" information, RCW 19.190.030(1)(b) (emphasis added)—it goes further than CAN-SPAM allows.

Plaintiff insists on a "clear nexus between the [CAN-SPAM] savings clause and CEMA" but conflates CEMA's "false or misleading" standard with CAN-SPAM's "falsity or deception" standard. *See* Kempf at 4–5. *Virtumundo* recognized that "'false' 'is potentially ambiguous', since the word may mean either 'erroneous, incorrect' or 'purposely deceptive.'" 575 F.3d at 1062 (citation omitted). But "[r]eading 'falsity' in conjunction with 'deception,' which connotes a type of tort action based on misrepresentations," the Ninth Circuit determined that "falsity" refers to "traditionally tortious or wrongful conduct." *Id.* (citation omitted). That is, merely being inaccurate (i.e. false or misleading) was insufficient. *See id.* at 1063–64 (defendant's claim failed to "rise[] to the level of 'falsity or deception' within the meaning of the CAN-SPAM Act's preemption clause" because there was "nothing inherently deceptive in [the defendant's] use of fanciful domain names").

The State's argument that CEMA's "plain language should end the analysis" fairs no better. State at 3. In *Virtumundo*, the State similarly sought to truncate the preemption analysis, arguing "that CEMA's prohibitions extend only to acts of deception." 575 F.3d at 1059. The Ninth Circuit disagreed. Looking to Washington law, it analyzed CEMA's terms which defines "misrepresent" as "representing incorrectly: to give a false, imperfect or *misleading* representation." *Id.* (emphasis added) (quoting *Benson v. Or. Processing Serv., Inc.*, 136 Wn. App. 587, 592 (2007)). It concluded these "broad definitions extend CEMA's prohibitive reach and purport to regulate a vast array of non-deceptive acts and practices." *Id.* Contrary to Plaintiff's contention, Kempf at 5, this analysis applies equally to section 1(a)—as challenged in *Virtumundo*—and section 1(b)—as challenged here, as both sections invoke a bare "misleading" standard. *Compare* RCW 19.190.020(1)(a) (forbidding header information that "misrepresents or

FULLBEAUTY'S REPLY ISO
MOT. TO DISMISS FIRST AM. COMPL. - 3
(2:25-cv-01141-RSM)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

obscures") *with id.* (1)(b) (forbidding commercial email that "[c]ontains false or misleading information in the subject line").

Logically, "deception" and merely "misleading" are not mutually interchangeable. Washington courts have recognized that "deception" requires conduct that "has the capacity to deceive a substantial portion of the public." *Stephens v. Omni Ins. Co.*, 138 Wn. App. 151, 166, (2007), *aff'd sub nom. Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27 (2009). Indeed, unlike CEMA, which relies on a bare "false or misleading" standard, the in-circuit cases Plaintiff cites upheld a California spam statute, which requires "that members of the public are likely to be deceived" by the challenged emails. *See Asis Internet Servs. v. Subscriberbase Inc.*, 2010 WL 1267763, at *9 (N.D. Cal. Apr. 1, 2010) (citation omitted).

### 2. Plaintiff does not allege materially misleading or otherwise deceptive emails.

Contrary to Plaintiff's claim, *Virtumundo*'s materiality requirement is far from dicta. *See* Kempf at 5. Plaintiff's own cited cases confirm that, under *Virtumundo*, a plaintiff must allege *materially* misleading statements to evade CAN-SPAM preemption. *See, e.g.*, *Wagner v. Spire Vision*, 2014 WL 889483, at *3 (N.D. Cal. Mar. 3, 2014) ("Only those e-mails which have materially deceptive or misleading subject lines or header information are actionable."); *Asis Internet Servs.*, 2010 WL 1267763, at *10 ("[I]t is clear that 'the word "deception" certainly denotes something more than immaterial inaccuracies or inadvertent mistakes[.]'") (citation omitted).

Plaintiff contends that the Washington Supreme Court has since "superimposed an objective materiality test on the statute, thus saving it from preemption." Kempf at 6–7. But that case did not address materiality. *See Cert. from U.S. Dist. Ct., W.D. Wash, in Brown v. Old Navy, LLC*, 4 Wn.3d 580 (2025). The *Brown* Court acknowledged the issue was "outside the scope of the certified question" but opined in dicta that, under common law, "[r]epresentations that constitute 'mere statements of opinion, not of fact,' are generally not actionable." *Id.* at 595 (citation omitted). At most, *Brown* discussed in dicta the difference between "mere puffery" and

FULLBEAUTY'S REPLY ISO
MOT. TO DISMISS FIRST AM. COMPL. - 4
(2:25-cv-01141-RSM)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

"representations of fact" about the length of a sale, its terms and nature, and the cost of goods. *Id.* at 596. In other words, statements of opinion are not "representations of existing fact" at all, as wholly distinct from the separate fraud element of "materiality." *See N. Pac. Plywood, Inc. v. Access Rd. Builders, Inc.*, 29 Wn. App. 228, 232 (1981).

Regardless, *Brown*'s passing reference to "facts Washington residents would depend on in making their consumer decisions," 4 Wn.3d at 596, does not elevate CEMA claims to the standard of deception animating *Virtumundo*'s materiality requirement. Plaintiff does not even attempt to contend that FullBeauty's conduct "has the capacity to deceive a substantial portion of the public." *See Stephens*, 138 Wn. App. 151 at 166.

Nor does Plaintiff dispute that she failed to allege the statements were material to her. Washington courts require more than materiality in the abstract: the statement must be material *to the plaintiff*. *See* Dkt. 25 ("Mot.") at 11 (collecting cases). The State rejects FullBeauty's citations because they did not concern CEMA claims, State at 5 n.3, but CEMA's failure to require materiality on par with common law torts is precisely the reason a claim under CEMA can be preempted.

### 3.    Plaintiff acknowledges that she does not allege reliance or damages.

*Virtumundo* makes clear that a claim must advance certain elements of "traditional tort theories such as claims arising from fraud or deception" to evade preemption. 575 F.3d at 1061–63 ("The Committee's repeated reference to 'fraud' and 'deception' is telling[.]"). Here Plaintiff makes no attempt to allege (1) reliance or (2) injury or damages.

**Reliance.** Plaintiff does not dispute that she failed to allege reliance. Instead, she rejects wholesale any requirement to allege reliance because some in-circuit district courts have since declined to require reliance. But Plaintiff's own case cite recognized a circuit split on the issue, which admittedly, "*Virtumundo* did not clearly resolve." *Asis Internet Servs.*, 2010 WL 1267763, at *10.

Plaintiff's cases stray further from any persuasive pull because they interpret California's anti-spam statute—not CEMA. Those same cases acknowledged that "Section 17529.5(a)(3) is

FULLBEAUTY'S REPLY ISO
MOT. TO DISMISS FIRST AM. COMPL. - 5
(2:25-cv-01141-RSM)

also quite distinct from the Washington statute in *Virtumundo*. This [California] provision does not prohibit any conduct that is not prohibited by the CAN–SPAM Act." *Id.* at *11. Indeed, unlike CEMA, California's statute requires knowledge, materiality, and deception, meaning "that members of the public are likely to be deceived" by the challenged emails. *See id.* at *9 (citation omitted). Given these notable differences, the principles articulated in *Virtumundo*, which actually interprets CEMA, remain the only persuasive authority.

The *Virtumundo* court tacitly rejected the sentiment that reliance was unnecessary to evade preemption, even under the more robust California statute. *Virtumundo* explained that a plaintiff must allege elements of "traditional tort theories such as claims arising from fraud or deception" to evade preemption, 575 F.3d at 1061–63. And Plaintiff does not dispute that reliance is a an element of traditional fraud theories.[2] Furthermore, the *Virtumundo* court relied on *Kleffman*, which held a claim brought under California's more robust anti-spam statute was preempted where the Plaintiff did not allege he was "misle[]d by any of the … emails." *Kleffman v. Vonage Holdings Corp.*, 2007 WL 1518650, at *3 (C.D. Cal. 2007), *aff'd*, 387 F. App'x 696 (9th Cir. 2010).

Here, Plaintiff similarly makes no attempt to allege that she was actually misled by any of FullBeauty's emails, let alone to her detriment. Nor does she allege, under California's anti-spam deception standard "that members of the public are likely to be deceived" by the challenged emails. *See Asis Internet Servs.*, 2010 WL 1267763, at *9 (citation omitted).

**Injury or Damages.** In construing CAN-SPAM's narrow preemption carve-out, the Ninth Circuit emphasized that "[i]t would be logically incongruous to conclude that Congress endeavored to erect a uniform standard but simultaneously left states and local lawmakers free to manipulate that standard to create more burdensome regulation." *Virtumundo*, 575 F.3d at 1063. To allege a violation of CAN-SPAM's analogous "deceptive subject headings," a plaintiff must allege, at a minimum, several of the elements of traditional torts: (1) "actual knowledge, or

---

[2] Neither Plaintiff nor the State contends that a traditional tort claim for "deception" does not require reliance.

FULLBEAUTY'S REPLY ISO
MOT. TO DISMISS FIRST AM. COMPL. - 6
(2:25-cv-01141-RSM)

knowledge fairly implied on the basis of objective circumstances," that (2) "a subject heading of the message would be likely to mislead a recipient" (3) "about a material fact." 15 U.S.C. § 7704(a)(2). And the plaintiff must be "adversely affected by a violation." *Id.* § 7706(g)(1).

Plaintiff does not dispute that she failed to allege she was "adversely affected" by the alleged CEMA violations. Plaintiff does not allege that she opened, read, or relied on the challenged emails, let alone that she made an unfavorable purchase or in any way experienced "actual harm," as required to bring a claim under CAN-SPAM. *See Virtumundo*, 575 F.3d at 1054 (requiring "a showing that the identified concerns are linked in some meaningful way to unwanted spam and, in turn, represent actual harm"). To allow a claim like Plaintiff's to proceed under CEMA without at a minimum alleging the basic elements CAN-SPAM requires would allow Washington to create a more burdensome, strict liability scheme for commercial entities. It further conflicts with "traditional tort theories," *id.* at 1063, which require some kind of "cognizable injury [that] could have resulted from" the challenged conduct, *see* Mot. at 10 (citation omitted) (collecting cases).

### 4. CEMA claims must be pleaded under Rule 9(b)'s heightened pleading standard.

Plaintiff's CEMA claim is predicated on the assumption that the challenged emails contained fraudulent or mistaken information. Consequently, her CEMA claim is subject to Rule 9(b)'s heightened pleading standard and neither Plaintiff nor the State's arguments to the contrary establish otherwise.

The State's citations to courts declining to apply Rule 9(b) to CPA claims are inapposite. FullBeauty at no point argues that all CPA claims must be pled under Rule 9(b). Instead, FullBeauty contends that Plaintiff must allege a CEMA violation with particularity to evade CAN-SPAM preemption. *See* Mot. at 11.

Plaintiff cites *Gordon v. Impulse Marketing Group, Inc.*, 375 F. Supp. 2d 1040, 1048 (E.D. Wash. 2005), for its holding that "CEMA claims 'do not trigger the heightened pleading requirements of Rule 9(b).'" Kempf at 11 (quoting *Impulse Mktg.*, 375 F. Supp. 2d at 1048).

FULLBEAUTY'S REPLY ISO
MOT. TO DISMISS FIRST AM. COMPL. - 7
(2:25-cv-01141-RSM)

*Impulse Marketing*, however, is not binding on this Court. *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." (citation omitted)). To the extent that Plaintiff's "complaint 'alleges a unified course of fraudulent conduct' and 'relies entirely on that course of conduct as the basis of [her CEMA] claim'" (as required to evade preemption), *Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1161 (9th Cir. 2009) (citation omitted) (quoting *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003)), the Court should hold that her CEMA claim is subject to Rule 9(b)'s heightened pleading standard, as other courts in this District have, *see Gordon v. Virtumundo, Inc.*, 2006 WL 3873368, at *3–4 (W.D. Wash. Dec. 8, 2006) (finding that Rule 9(b) applied to CEMA claims and rejecting *Impulse Marketing*).

**B.  CEMA Is Invalid to the Extent It Applies to Conduct Wholly Outside of Washington.**

**1.  CEMA impermissibly seeks to regulate emails sent and received wholly outside of Washington.**

Plaintiff and the State's assertions that *National Pork*, 598 U.S. 356, overruled the holding in *Healy*—or nullified the cases in the Western District of Washington like *Hartman* and *Booth*—is untrue, as is their insinuation that FullBeauty attempts to evade binding authority by citing them. Mot. at 21. The fractured decision in *National Pork* merely dispelled a per se rule against state laws with extra-territorial *effects*. But CEMA *directly regulates* conduct occurring *wholly outside* of Washington, which, under binding Ninth Circuit precedent, is unlawful.

In *National Pork*, the Supreme Court was asked "to fashion two new and more aggressive constitutional restrictions" in the form of *per se* rules against *extraterritorial effects*, in the context of a statute that "regulates only products that companies choose to sell 'within' California." *See* 598 U.S. at 364, 376 n.1 (citation omitted). As such, it did not address where a law directly regulates wholly out-of-state conduct. *See id.* Several courts have noted and applied this distinction, finding that *National Pork* left untouched case law related to state laws that directly regulate of out-of-state transactions. *See, e.g.*, *Nat'l Shooting Sports Found. v. Bonta*,

FULLBEAUTY'S REPLY ISO
MOT. TO DISMISS FIRST AM. COMPL. - 8
(2:25-cv-01141-RSM)

718 F. Supp. 3d 1244, 1256 n.1 (S.D. Cal. 2024) (*National Pork* "did not disturb the constitutional bar on state laws that 'directly regulate out-of-state transactions by those with **no** connection to the State'" (citation modified)), *reconsideration denied*, 2025 WL 1012326 (S.D. Cal. Mar. 31, 2025); *Ass'n for Accessible Meds. v. Ellison*, 704 F. Supp. 3d 947, 953 (D. Minn. 2023) (*National Pork* "did not change the rule that a state may not directly regulate transactions that take place wholly outside the state and have no connection to it"), *aff'd*, 140 F.4th 957 (8th Cir. 2025). In fact, the Supreme Court in *National Pork* declined to vitiate the longstanding principle that laws may not "directly regulate[] out-of-state transactions by those with no connection to the State." 598 U.S. at 376 n.1 (emphasis omitted).[3]

As the State recognizes, "several Justices wrote separately" in *National Pork*. State at 14. The Ninth Circuit subsequently confirmed that because "the [*National Pork*] Court did not agree upon a single rationale" for its "fractured decision," only the specific result in that case is binding. *Iowa Pork Producers Ass'n v. Bonta*, 2024 WL 3158532, at *2, 3 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 2866 (2025).[4]

Either way, "[t]he Supreme Court did not curtail the *Baldwin-Healy* line of cases" and "[i]n light of this," courts in this Circuit still "follow[] the precedent set in *Sam Francis* and *Sharpsmart*." *Ass'n for Accessible Meds. v. Bonta*, 766 F. Supp. 3d at 1033. Those precedents make clear that a state may not regulate transactions occurring wholly outside its borders. *See* Mot. § IV.B.1.

The State insists that Washington may apply CEMA to residents "who are temporarily outside of the state" because Washington "has a state interest in protecting its consumers." State at 14. But binding Ninth Circuit precedent has already rejected this attempted residency hook. *See Sam Francis*, 784 F.3d at 1323 (California's statute "violates the dormant Commerce Clause"

---

[3] The Supreme Court noted this judge-made principle FullBeauty relies on may not be a "Commerce Clause question as much as one testing the territorial limits of state authority under the Constitution's horizontal separation of powers." *Id*.

[4] Nor is it "curious[]," as the State observes, that FullBeauty cited the Ninth Circuit's decision in *National Pork*. State at 13 n.11. The Ninth Circuit has since "conclude[d] that *NPPC I* remains controlling in this circuit." *Iowa Pork*, 2024 WL 3158532, at *2.

FULLBEAUTY'S REPLY ISO
MOT. TO DISMISS FIRST AM. COMPL. - 9
(2:25-cv-01141-RSM)

because it "facially regulates a commercial transaction that 'takes place wholly outside of the State's borders'" despite being limited to transactions where "*the seller resides in California* or the sale takes place in California" (emphasis added) (citation modified)). Nor did *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 819 (1985), hold that a state can rely on a residency hook to regulate wholly out-of-state conduct. *Id*. at 819, 822–23. Rather, the Supreme Court "*reverse[d]* [the state court's] judgment insofar as it held that Kansas law was applicable to all of the transactions which it sought to adjudicate" even though the defendant, unlike FullBeauty, "own[ed] property and conduct[ed] substantial business in the State." *Id.* (emphasis added). And a California federal court has already rejected a nearly identical, post-*National Pork* attempt to evade the extra-territoriality restriction, reasoning that, "despite the State having sufficiently strong ties to the subjects of regulation (namely, attempting to regulate state residents' conduct), the Ninth Circuit struck down the statute[]" in multiple prior cases. *See Ass'n for Accessible Meds. v. Bonta*, 766 F. Supp. 3d at 1033–34.

### 2.    CEMA is facially invalid because it directly regulates transactions occurring wholly outside of Washington.

CEMA is facially invalid, because, as drafted, "no set of circumstances exists under which [CEMA] would be valid." *Contra* State at 15 (quoting *S.D. Myers, Inc. v. City & Cnty. of S.F.*, 253 F.3d 461, 467 (9th Cir. 2001)). The State "presumably believes that [its cited language from *S.D. Myers*] dooms a facial challenge because this statute *could* be applied to purely in-state commercial transactions, which a state may constitutionally regulate." *Nat'l Shooting*, 718 F. Supp. 3d at 1257. But, as the State's own case concluded, "by that logic, a state law policing economic activity everywhere in the world—including within the state—would be immune to facial attack." *Id.* Like the statute challenged in *Sam Francis*, CEMA regulates transactions occurring out of state merely because they involve a Washington resident and therefore "facially regulates a commercial transaction that 'takes place wholly outside of the

FULLBEAUTY'S REPLY ISO
MOT. TO DISMISS FIRST AM. COMPL. - 10
(2:25-cv-01141-RSM)

State's borders.'" 784 F.3d at 1323 (citation omitted). CEMA is therefore facially invalid.[5] *See id.*; *see also Ass'n for Accessible Meds. v. Bonta*, 766 F. Supp. 3d at 1033, 1036 (invalidating statute that "on its face may result in the extraterritorial regulation of settlement agreements in which none of the parties, the agreement, or the pharmaceutical sales have any connection with California" and limiting application to in-state settlement agreements).

### 3. CEMA is invalid as applied because Plaintiff does not adequately allege that she was located in Washington when she received the challenged emails.

CEMA is also invalid as applied. FullBeauty is an Indiana company with its principal place of business in New York. FAC ¶ 6. Although Plaintiff alleges she is currently a Washington resident, she does not allege that she was ***actually within*** Washington when she received any of the emails at issue. Indeed, Plaintiff's FAC is conspicuously silent as to her location at the time she received the challenged emails. Plaintiff asks the Court to infer that she was located in Washington when she received each of the emails at issue simply because she resides there, Kempf at 13, but that is not the standard on a motion to dismiss. *See In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (Courts do not "accept as true … unwarranted deductions of fact"). If anyone has knowledge of Plaintiff's location when she received the emails, it is Plaintiff. Yet even after FullBeauty challenged Plaintiff's failure to identify her location in its Motion to Dismiss the original Complaint (Dkt. 17 at 3, 20 n.6), she amended her Complaint and still selectively omitted the information. *See* FAC. Plaintiff is not entitled to an inference in her favor.

In sum, Plaintiff fails to allege that she was in Washington when she received any challenged emails, or any other facts demonstrating that any of the conduct underlying her claims took place within Washington's borders. And because applying CEMA to prohibit an email initiated and received outside of Washington would exceed the "territorial limits of state authority" under the Constitution, *Nat'l Pork*, 598 U.S. at 374, 376 n.1, CEMA is invalid as applied.

---

[5] Unlike in *Sam Francis*, neither Plaintiff nor the State attempt to argue that the Court can sever the offending provision from CEMA. 784 F.3d at 1325 (severing offending residency hook from California statute in light of statutory severability provision and limiting enforcement of statute to in-state conduct).

FULLBEAUTY'S REPLY ISO
MOT. TO DISMISS FIRST AM. COMPL. - 11
(2:25-cv-01141-RSM)

## C.        CEMA Excessively Burdens Interstate Commerce.

Contrary to the State's assertion, a statute does not need to discriminate to offend the dormant Commerce Clause. *See* State at 12. In *National Pork* the Supreme Court acknowledged that it "has left the 'courtroom door open' to challenges premised on 'even nondiscriminatory burdens.'" 598 U.S. at 379–80 (citation omitted). "Absent discrimination, [a court] will uphold the law 'unless the burden imposed on interstate commerce is clearly excessive in relation to the putative local benefits.'" *Rocky Mountain Farmers Union v. Corey*, 730 F.3d 1070, 1087–88 (9th Cir. 2013) (citation modified) (quoting *Pike v. Bruce Church, Inc*, 397 U.S. 137, 142 (1970)).

As drafted, CEMA's burden on interstate commerce is clearly excessive compared to any putative local benefits. Plaintiff dismisses the "sweeping costs" alleged in *National Pork* as insufficient. Kempf at 19. But the Supreme Court did not conclude that the burden was insufficient; it concluded that it could not compare the burden of non-compliance against the moral benefits of California's animal cruelty law because California voters were "entitled to weigh the relevant 'political and economic' costs and benefits for themselves." *Nat'l Pork*, 598 U.S. at 382 (citation omitted). And FullBeauty does not merely contest the cost of compliance. The Fourth Circuit recognized "important interests" at stake with respect to an Oklahoma anti-spam statute, including not only that "one state's Internet laws may impose compliance costs on businesses throughout the country, because it is difficult for businesses to determine where Internet users are located," but also the "deterrent effect on commercial speech" of "a statute that authorizes enormous statutory damages."[6] *Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348, 356–57 (4th Cir. 2006).

---

[6] As drafted, Plaintiff's putative class action complaint—which seeks to recover $500 per email per recipient for countless emails regardless of whether the recipients opened or read them and regardless of whether they were even harmed—threatens to impose unduly punitive damages on FullBeauty in violation of the Due Process Clause. *Cf. Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1120 (9th Cir. 2022). Plaintiff does not dispute this and instead merely asks the Court to punt the decision on whether FullBeauty must expend substantial resources defending a lawsuit where the damages could total in the hundreds of millions of dollars.

The State confuses the issues of due process violations with statutory interpretation, asserting the "Washington State Supreme Court has already assessed the provision[,]" State at 20, in *Brown*. The *Brown* court rejected a different argument: "that it would be absurd to interpret subsection (1)(b) as to give statutory damages for a false statement in a subject line because the same statement in the body of the e-mail would warrant only actual

FULLBEAUTY'S REPLY ISO
MOT. TO DISMISS FIRST AM. COMPL. - 12
(2:25-cv-01141-RSM)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

The Court can properly weigh these burdens against Washington's minimal interest in enforcing CEMA. Congress has already enacted a law that regulates and clearly defines the contours of "misleading" email subject lines and cautioned against conflicting, piecemeal state enforcement. Washington's local interest in independently regulating misleading email subject lines is comparatively minimal against the backdrop of an existing federal standard addressing the same type of conduct. *See* 15 U.S.C. § 7704(a)(2).

Finally, CAN-SPAM does not insulate CEMA from constitutional scrutiny. Kempf at 20–21. Plaintiff is correct that "state actions which [Congress] plainly authorizes are invulnerable to constitutional attack under the Commerce Clause." *Ne. Bancorp, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 472 U.S. 159, 174 (1985). But Congress's decision not to specifically preempt a subset of state laws does not mean that Congress "plainly authorize[d]" states to regulate those categories freely. Even if Plaintiff's CEMA claim fit into CAN-SPAM's carveout, it still offends the dormant Commerce Clause by projecting Washington's restrictions on commercial emails into the jurisdiction of other states and subjecting FullBeauty to inconsistent regulatory schemes. *See NCAA v. Miller*, 10 F.3d 633, 639 (9th Cir. 1993). CEMA further raises the specter of unconstitutionally punitive aggregated statutory damages and directly regulates emails sent and received entirely outside of Washington. Congress's decision to allow states to continue to regulate fraud and deception was not carte blanche to impose additional, blatantly unconstitutional regulations on out-of-state entities.

Regardless, as FullBeauty has argued, CAN-SPAM carved out from its savings clause state laws that aim to impose more stringent burdens on interstate commerce. CEMA, as one of the disparate state statutes attempting to regulate commercial email, implicates the precise nationwide concerns Congress identified.

---

damages under the CPA." 4 Wn.3d at 592. *Brown*'s holding did not address whether CEMA's statutory damages, when aggregated against a defendant like FullBeauty, violate the Due Process Clause.

FULLBEAUTY'S REPLY ISO
MOT. TO DISMISS FIRST AM. COMPL. - 13
(2:25-cv-01141-RSM)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

### D.      Plaintiff Fails to Adequately Allege That FullBeauty Knew or Had Reason to Know That Plaintiff Was a Washington Resident.

Attempting to argue that FullBeauty knew or should have known that she is a Washington resident, Plaintiff rehashes her allegations regarding FullBeauty's marketing analytics and the "WHOIS" lookup of her email's domain name. As previously noted, under its Privacy Policy FullBeauty "may analyze aggregated, de-identified data." Mot. at 21 (emphasis omitted). But de-identified data by definition cannot give FullBeauty knowledge of Plaintiff's residency. Plaintiff's references to information collected by FullBeauty's various marketing vendors also are not sufficient to impute knowledge of her residency to FullBeauty. The fact that a vendor collects information does not mean that FullBeauty itself has access to that information. Additionally, the "WHOIS" lookup for Plaintiff's email domain does not establish that FullBeauty had reason to know Plaintiff's residency. There is no reason to believe that FullBeauty would be provided the domain registrar contact information given that the information was "REDACTED FOR PRIVACY." *Id*. at 21–22.

Without FullBeauty's marketing analytics or the "WHOIS" lookup providing knowledge to FullBeauty of Plaintiff's residency, Plaintiff's remaining allegations resolve to her IP address. But as discussed in FullBeauty's motion, IP addresses are not a reliable way to establish residency. Plaintiff's sole citation to the contrary, *Malibu Media, LLC v. Does*, 2012 WL 2921227 (S.D. Cal. July 17, 2012), is unpersuasive. There, the court was faced with a motion to authorize discovery prior to a Rule 26(f) conference in a case ***where no defendants had appeared***. *See id.* The only discussion of the reliability of IP addresses in that case was the court's noting that venue as alleged in the complaint was predicated on the Doe defendants' IP addresses. *Id.* at \*4. *Malibu Media* predates FullBeauty's authorities on this topic and assumed, without hearing any argument to the contrary, that IP addresses were sufficient to justify the issuance of third-party subpoenas to discover more precise information regarding the defendants' identities and locations. The Court should not credit an opinion devoid of any analysis issued by a court lacking the benefit of an adversarial process.

FULLBEAUTY'S REPLY ISO
MOT. TO DISMISS FIRST AM. COMPL. - 14
(2:25-cv-01141-RSM)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Finally, Plaintiff's citation to *Von Gohren v. Pacific National Bank*, 8 Wn. App. 245 (1973), is inapposite. The *Von Gohren* plaintiff was attempting to recover funds from the defendant bank that he alleged were embezzled by his bookkeeper when she, among other things, deposited checks made out to his business into her personal bank account. *Id*. at 246–48. Because the relevant question was whether the defendant bank, as a "holder in due course" had "reason to know" that the bookkeeper was exceeding her fiduciary authority, the court looked to the Restatement (Second) of Agency for how it defined "reason to know." *Id.* at 251–52. Agency law was relevant to the issues in *Von Gohren*, but Plaintiff offers no reason for why the Court should import agency law into this case that is, at bottom, about alleged fraudulent conduct and consumer protection. Even if she had provided a reason, Plaintiff's CEMA claim still must be dismissed because the FAC's allegations do not establish that FullBeauty "ha[d] information from which a person of ordinary intelligence, or of the superior intelligence which such person may have would infer that" Plaintiff resided in Washington. *See id.* at 252.

### E.    Plaintiff Fails to Adequately Allege That FullBeauty's Sale Extensions Were Predetermined.

Plaintiff's allegations that FullBeauty's extended sales were actually predetermined are without merit. Equally meritless are Plaintiff's attempts to save those allegations in her opposition to FullBeauty's motion.

Plaintiff's opposition relies primarily on one case, *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011), and only acknowledges in passing one case, *Eclectic Properties East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990 (9th Cir. 2014), of the several relied upon by FullBeauty in its motion, *see* Kempf at 24–25. Plaintiff's failure to meaningfully engage with FullBeauty's authorities, the majority of which post-date *Starr*, is telling. A "more recent examination of Rule 8(a)" than *Starr* dismissed a complaint "because, 'when faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation. Something more is needed, such as facts ***tending to exclude the***

FULLBEAUTY'S REPLY ISO
MOT. TO DISMISS FIRST AM. COMPL. - 15
(2:25-cv-01141-RSM)

*possibility that the alternative explanation is true*, in order to render plaintiffs' allegations plausible.'" *Eclectic Props.*, 751 F.3d at 996–97 (citation modified) (emphasis added) (quoting *In re Century Aluminum Co. Secs. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013)); *see also Prudencio v. Midway Importing, Inc.*, 831 F. App'x 808, 810 (9th Cir. 2020); *Integra Med Analytics LLC v. Providence Health & Servs.*, 854 F. App'x 840, 844 (9th Cir. 2021); *LHF Prods., Inc. v. Doe 1*, 2017 WL 714227, at *2 (W.D. Wash. Feb. 23, 2017) (Martinez, J.) ("As noted by the Ninth Circuit in *In re Century Aluminum Co. Securities Litigation*, parties must allege something more, 'such as facts tending to exclude the possibility that an alternative explanation is true,' when 'faced with two possible explanations, only one of which can be true and only one of which results in liability.' 729 F.3d 1104, 1108 (9th Cir. 2013)." (citation modified)); *see also Adomitis ex. rel. U.S. v. San Bernardino Mountains Cmty. Hosp. Dist.*, 816 F. App'x 64, 66–67 (9th Cir. 2020).

As noted, Plaintiff has received thousands of emails from FullBeauty, but can identify only five instances where sales were extended after an initial email announcing the end of the sale was sent. Plaintiff alleges, without any supporting facts, that these limited instances of FullBeauty extending these sales were actually attempts to deceive consumers as opposed to extemporaneous decisions made in response to developing business conditions.

Contrary to Plaintiff's assertion, the allegations that FullBeauty "sends 'the last of the emails warning of a promotion ending in a matter of hours' at the end of the day and announces an "extension" early in the morning the next day[,]" does not "affirmatively undercut FullBeauty's 'innocuous alternative explanation.'" Kempf at 25 (quoting FAC ¶ 23 & *Eclectic Props.*, 751 F.3d at 997). These allegations do not account for the fact that FullBeauty is a modern business, operating across multiple time zones, and capable of quickly collecting and analyzing complex sales data. Because Plaintiff's allegations regarding the first category of challenged emails "do[] not tend to exclude a plausible and innocuous alternative explanation,"

FULLBEAUTY'S REPLY ISO
MOT. TO DISMISS FIRST AM. COMPL. - 16
(2:25-cv-01141-RSM)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Eclectic Props*, 751 F.3d at 998, the Court should dismiss Plaintiff's CEMA claim to the extent it relies on these emails.[7]

**F.      Plaintiff's CPA Claim Fails Because It Does Not Allege a Single CEMA Violation.**

Plaintiff's opposition acknowledges that her CPA claim rises or falls with her alleged CEMA violations. *See* Kempf at 25–26 (recognizing the "symbiotic relationship" between the statutes). She does not dispute that she failed to allege the elements of an independent CPA claim. Because Plaintiff fails to allege a single CEMA violation, the Court should dismiss her CPA claim. *See* Mot. at 24.

### III.      CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's FAC with prejudice, as Plaintiff cannot cure the fundamental defects in her claims.

DATED this 14th day of November, 2025.

Davis Wright Tremaine LLP

By  s/ *Lauren B. Rainwater*
Lauren B. Rainwater, WSBA #43625
Emily Parsons, WSBA #57061
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
Telephone: 206-622-3150
E-mail: laurenrainwater@dwt.com
E-mail: emilyparsons@dwt.com

Jacob Harper, *pro hac vice*
350 South Grand Avenue, 27th Floor
Los Angeles, CA  90071
Telephone: 213-633-6800
E-mail: jharper@dwt.com

*Attorneys for Defendant*

---

[7] When evaluating allegations in a complaint, the Court may "draw on its judicial experience and common sense." *Id.* at 996 (citation omitted). Here, common sense supports the conclusion that the lone identified email with an apparent scrivener's error reflecting the wrong promotion expiration date does not, against the background of the volume of FullBeauty's marketing emails received by Plaintiff and Plaintiff's other allegations, demonstrate that the "extensions are preordained by the expiration dates in the fine print." FAC ¶ 24.

FULLBEAUTY'S REPLY ISO
MOT. TO DISMISS FIRST AM. COMPL. - 17
(2:25-cv-01141-RSM)

I certify that this memorandum contains 5,911 words, in compliance with the Local Civil Rules and the Court's Order (Dkt. 29).

FULLBEAUTY'S REPLY ISO
MOT. TO DISMISS FIRST AM. COMPL. - 18
(2:25-cv-01141-RSM)