The Honorable Thomas S. Zilly

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

JULIE ANNE KEMPF, on behalf of herself and all others similarly situated,

Plaintiff,

v.

FULLBEAUTY BRANDS OPERATIONS, LLC, an Indiana limited liability company,

Defendant.

NO. 2:25-cv-01141-TSZ

**PLAINTIFF'S RESPONSE TO THE COURT'S FEBRUARY 13, 2026 MINUTE ORDER (DKT. 48)**

NOTED ON MOTION CALENDAR: March 13, 2026

PLAINTIFF'S RESPONSE TO THE COURT'S
FEBRUARY 13, 2026 MINUTE ORDER
(Case No. 2:25-cv-01141-TSZ)

MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

## I.    INTRODUCTION

Plaintiff Julie Anne Kempf ("Plaintiff") respectfully submits this response to the Court's Minute Order dated February 13, 2026 (Dkt. 48), which directed the parties to address (a) whether Plaintiff has Article III standing and (b) whether the Court has subject-matter jurisdiction under the Class Action Fairness Act ("CAFA").

When a defendant removes a case to federal court, the burden is on that defendant, as the party invoking the Court's jurisdiction, to establish that the Court has subject-matter jurisdiction, including Article III standing. Defendant has failed to do so under applicable Ninth Circuit precedent.

Under *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021), a statutory violation confers federal standing only where the plaintiff's alleged injury bears a "close relationship" to a harm traditionally recognized as providing a basis for suit at common law. The Ninth Circuit recently clarified that this inquiry requires courts to "look to the *specific* underlying harm experienced by the plaintiff and compare it, in detail, to a *specific* common-law tort." *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025). This rigorous analysis requires a close fit between the *individual plaintiff's* allegations and "the key elements that shape the harm proscribed by [a particular] common-law tort." *See Popa*, 153 F.4th 792.

Applying that framework here, Defendant identifies no historically recognized harm that Plaintiff herself experienced. Nevertheless, if the Court concludes that receipt of each allegedly violative email constitutes a concrete injury sufficient for Article III standing, then CAFA jurisdiction is necessarily satisfied. Defendant's own evidence establishes that at least 15,000 Washington recipients received the emails at issue, yielding more than $5 million in controversy under either a per-recipient or per-violation damages framework.

Accordingly, remand is appropriate. Defendant has failed to establish standing and, therefore, subject-matter jurisdiction. If jurisdiction exists, however, CAFA's requirements are met.

PLAINTIFF'S RESPONSE TO THE COURT'S
FEBRUARY 13, 2026 MINUTE ORDER
(Case No. 2:25-cv-01141-TSZ) - 1

McNaul Ebel pllc
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

## II.   ARGUMENT

**A.   Defendant has failed to establish Article III standing because the alleged statutory violations do not closely resemble any traditionally actionable harm.**

"Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion*, 594 U.S. at 427 (emphasis omitted). In determining whether a concrete harm has occurred, courts must determine whether the plaintiff's asserted injury bears a "close relationship" to a harm traditionally recognized at common law. *TransUnion*, 594 U.S. at 423–25. The Ninth Circuit's recent decision interpreting these requirements in *Popa* is controlling and dispositive. *See generally Popa*, 153 F.4th 784.

In its response, Defendant argues that Plaintiff has standing because "she was subjected to the injury of receiving allegedly deceptive e-mails," and that CEMA protects residents "from the nuisance of receiving deceptive commercial e-mails," which it says courts have deemed sufficient for constitutional standing. Dkt. 48 at 2, 5. Defendant's argument relies on pre-*Popa* reasoning and does not apply the Ninth Circuit's controlling framework. In fact, Defendant does not cite *Popa* at all. That failure is fatal to Defendant's assertion of subject-matter jurisdiction.

### 1.   *Popa* provides the governing test and rejects the generalized standing theory Defendant advances.

In *Popa*, the Ninth Circuit explained that "*TransUnion* contemplates a standing inquiry particularized to a plaintiff's circumstances and benchmarked to a specific tort." *Popa*, 153 F.4th at 791. A court may not conclude that standing exists merely because a statute protects against a similar *type* of harm that was redressable at common law. Thus, in a case involving privacy violations arising from the use of session-replay technology on a commercial website, the court rejected analogies to generalized "privacy" theories framed at a high level of abstraction: there was "no free-roaming privacy right at common law but rather four discrete

PLAINTIFF'S RESPONSE TO THE COURT'S
FEBRUARY 13, 2026 MINUTE ORDER
(Case No. 2:25-cv-01141-TSZ) - 2

McNaul Ebel PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

torts that protected specific kinds of privacy-related harms." *Id.* at 792 (rejecting a "broad theory that the common law protected privacy rights—pitched at a high level of generality" because it "does not align with the analysis adopted in *TransUnion*"). Similarly, in *TransUnion*, the Supreme Court "considered carefully the key elements that shape the harm proscribed by" the tort of defamation, "grouped plaintiffs who alleged similar facts, and assessed whether the *specific* plaintiffs had experienced harm of that nature." *Popa*, 153 F.4th 792. In so doing, "[t]he Court determined that some plaintiffs had standing to bring a claim under the statute while others did not—an implicit rejection of a one-size-fits-all approach." *Id.*

Defendant contends that the "injury in fact requirement 'creates a pleading floor' for jurisdictional purposes." Dkt. 49 at 6 (quoting *Jones v. Ford Motor Co.*, 85 F.4th 570, 573–74 (9th Cir. 2023)). But Defendant's misreading of *Jones* inverts the relationship between statutory and constitutional injury in this case. *Jones* addressed a situation where a plaintiff had Article III standing but failed to plead the *more demanding* elements of a statutory cause of action, which was a merits deficiency, not a jurisdictional one. That principle has no application here. The question is not whether Plaintiff has adequately pleaded a complete CEMA claim; she has. *See* Dkt. 47. The question is whether a completed violation of CEMA—a Washington resident's receipt of an email with a misleading subject line—clears the constitutional floor that *Jones* describes. *Popa* confirms that a plaintiff may state a valid statutory claim and still fail to allege a concrete injury sufficient for Article III. That is precisely this case: the injury CEMA defines and the harm alleged by Plaintiff do not bear a close relationship to any harm traditionally recognized at common law.

> **2.      Defendant fails to meet its burden of showing Plaintiff alleges a concrete harm comparable to an injury that was historically actionable at common law.**

Defendant's standing argument rests on the premise that Plaintiff suffered injury by "receiving allegedly deceptive e-mails." Dkt. 48 at 5. Rather than identifying a plaintiff-

PLAINTIFF'S RESPONSE TO THE COURT'S
FEBRUARY 13, 2026 MINUTE ORDER
(Case No. 2:25-cv-01141-TSZ) - 3

McNaul Ebel PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

specific harm alleged in the complaint and testing it against a historical analogue, Defendant treats the statutory violation itself—the receipt of a misleading commercial email—as the injury. But the correct inquiry under *TransUnion* and *Popa* is not whether a statute regulates certain conduct in the abstract; it is whether the "*specific* underlying harm experienced by the plaintiff" has a close fit with "the key elements that shape the harm proscribed by" a closely analogous common-law tort. *Popa*, 153 F.4th at 792.

The complaint alleges that Defendant transmitted commercial emails containing allegedly misleading subject lines in violation of CEMA. FAC ¶ 11 (Dkt. 22). The pleading explains Defendant's marketing practices and their effects on the consumer experience generally, describing how false and misleading subject lines influence consumer behavior and contribute to unwanted commercial email traffic. FAC ¶¶ 19, 21. Those allegations describe the systemic effects of the asserted statutory violation; Defendant has failed to show that those allegations establish Plaintiff herself suffered a traditionally cognizable injury. As to Plaintiff specifically, Plaintiff alleges that she does not wish to receive emails containing misleading subject lines and that, because of Defendant's practices, she cannot readily distinguish truthful promotional emails from misleading ones. FAC ¶ 70. Plaintiff does not allege reliance, an injury to property, or other economic loss.

Defendant characterizes Plaintiff as alleging a nuisance or fraud-type injury. Dkt. 49 at 2, 6; see also Dkt. 25 at 9–10 (comparing CEMA violation to common-law fraud claim). Those comparisons do not withstand scrutiny.

Because the CEMA provision at issue is concerned with the accuracy of representations in commercial email rather than intrusive conduct, fraudulent misrepresentation provides the closest historical analogue. Yet the complaint bears little in common with its defining elements. Under Washington law, fraudulent misrepresentation requires the plaintiff to show "(1) a representation of existing fact, (2) its materiality, (3) its falsity, (4) the speaker's knowledge of its falsity, (5) the speaker's intent that it be acted upon

PLAINTIFF'S RESPONSE TO THE COURT'S
FEBRUARY 13, 2026 MINUTE ORDER
(Case No. 2:25-cv-01141-TSZ) - 4

MᴄNᴀᴜʟ Eʙᴇʟ ᴘʟʟᴄ
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

by the person to whom it is made, (6) ignorance of its falsity on the part of the person to whom the representation is addressed, (7) the latter's reliance on the truth of the representation, (8) the right to rely upon it, and (9) consequent damage." *PCF Ins. Servs. of the W., LLC v. Fritts*, 2024 WL 1299954, at *2 (W.D. Wash. Mar. 27, 2024) (quoting *Elcon Const., Inc. v. E. Washington Univ.*, 174 Wn.2d 157, 166 (2012)). A misrepresentation claim arises not from the plaintiff's receipt of a misleading statement alone, but from reviewing and acting upon it to her detriment. As this Court recently recognized, CEMA claims do not sound in fraud, and they do not require allegations of reliance, injury, or actual damages. Dkt. 47 at 11. Under *Popa*'s element-by-element comparison, exposure to an allegedly misleading commercial message—without reliance or resulting injury—does not closely resemble the harm redressed by the tort of fraudulent misrepresentation, and Defendants do not and cannot point to any allegations in the Complaint that allege otherwise.

Nuisance fares no better as a historical analogue. Under Washington law, nuisance requires "(1) tortious or unlawful conduct on the defendant's part (2) that substantially or unreasonably interferes with the plaintiff's use and enjoyment of [her] property." *S. Lake Union Hotel LLC v. F&F Rogers Family Ltd. P'ship*, 2025 WL 1744784, at *2 (W.D. Wash. June 24, 2025). Again, Plaintiff's allegations describe uncertainty regarding the content of marketing communications, not a substantial interference with Plaintiff's use of property. The Restatement's nuisance illustrations involve recurring invasions that materially impair the use of *land*, such as smoke, noise, or flooding. *See* Restatement (Second) of Torts § 821D. Because the FAC alleges, at most, uncertainty evaluating commercial messages rather than substantial interference with property use, the asserted injury does not bear the close relationship to nuisance required by *TransUnion* and *Popa*.

Defendant's argument ultimately rests on the premise that CEMA itself defines the injury—that the violation of a statutory right to be free from misleading commercial emails is sufficient, standing alone, to establish Article III standing. But *TransUnion* and *Popa* foreclose

PLAINTIFF'S RESPONSE TO THE COURT'S
FEBRUARY 13, 2026 MINUTE ORDER
(Case No. 2:25-cv-01141-TSZ) - 5

MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

that approach. The constitutional inquiry turns on the plaintiff's experienced harm, not the Legislature's description of prohibited conduct. Treating the statutory violation itself as the injury would collapse the distinction *TransUnion* reaffirmed between injury in law and injury in fact, allowing legislatures to confer federal jurisdiction based on "say-so." *TransUnion*, 594 U.S. at 426. Because Defendant identifies no plaintiff-specific concrete harm that resembles a traditional injury recognized under common law beyond the alleged statutory violation itself, its standing theory cannot satisfy Article III.

> **3.      Defendant relies on district court decisions that do not apply the post-*Popa* framework.**

In resisting this conclusion, Defendant relies heavily on *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999 (W.D. Wash. 2019), and other district court decisions to argue that receipt of a deceptive commercial email constitutes a concrete injury in fact. But those decisions predate the Ninth Circuit's intervening guidance in *Popa*, which clarified the analytical rigor required by *TransUnion*. Plaintiff respectfully submits that *Harbers* does not align with *Popa*'s application of the "close relationship" test, which requires detailed comparison between a plaintiff's alleged injury and the elements of specific common-law torts.

*Harbers* was correctly decided on the law as it then stood. The court asked whether CEMA "was established to protect 'a concrete interest that is akin to a historical, common law interest,'" thereby conducting the *categorical* inquiry the law at the time called for. *Harbers*, 415 F. Supp. 3d at 1006 (quoting *Dutta v. State Farm Mut. Auto. Ins. Co.*, 895 F.3d 1166, 1174 (9th Cir. 2018)); *see also Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1113 (9th Cir. 2017) ("*Spokeo II*"). Surveying CEMA's legislative history and *State v. Heckel*, 143 Wn.2d 824 (2001), Judge Robart concluded that "[t]he harms resulting from deceptive commercial e-mails resemble the type of harms remedied by nuisance or fraud actions," and that CEMA therefore protected a concrete interest sufficient for Article III standing. *Harbers*, 415 F. Supp. 3d at 1008. Having identified that general resemblance, he concluded that a plaintiff "need not

PLAINTIFF'S RESPONSE TO THE COURT'S
FEBRUARY 13, 2026 MINUTE ORDER
(Case No. 2:25-cv-01141-TSZ) - 6

allege any additional harm beyond the CEMA violations to allege a concrete injury-in-fact . . . ." *Id.* at 1011.

*TransUnion* and *Popa* subsequently refined the inquiry in a way the *Harbers* court could not have anticipated. The existence of a statutory cause of action and a historically grounded legislative interest no longer resolve the concreteness inquiry. As *TransUnion* explained, "we cannot treat an injury as 'concrete' for Article III purposes based only on [the legislature's] say-so." *TransUnion*, 594 U.S. at 426 (quotation omitted); *see also Popa*, 153 F.4th 792. Where *Harbers* asked whether CEMA resembles a common-law category in the abstract, *Popa* held that *TransUnion* requires something more demanding: a comparison of "the specific underlying harm experienced by the plaintiff" against "the key elements that shape the harm proscribed by" a specific tort—benchmarked to the individual plaintiff's circumstances, not the statute's general remedial purpose.[1] *Popa*, 153 F.4th at 791–92. Read in light of that clarification, the question is not whether CEMA protects a concrete interest in the abstract, but whether the injury alleged by *this* plaintiff corresponds to the defining elements of a specific tort. As explained above, it does not.

Defendant's reliance on pre-*TransUnion* (and even pre-*Spokeo*) cases involving unwanted robocalls or text messages is similarly misplaced. *See* Dkt. 49 at 4. Those cases rest on the same pre-*TransUnion* mode of reasoning as *Harbers* and therefore have limited persuasive force. They typically concluded that unwanted communications constituted a concrete injury by analogizing, at a categorical level, to privacy or nuisance harms without undertaking the element-by-element comparison required by *TransUnion* and clarified in *Popa*. *See, e.g.*, *Booth v. Appstack, Inc.*, 2016 WL 3030256, at *5 (W.D. Wash. 2016) (holding

---

[1] Defendant also cites *Diaz v. One Techs., LLC*, 2022 WL 72283 (C.D. Cal. Jan. 6, 2022), a commercial email case decided shortly after *TransUnion*. *Diaz* framed the standing inquiry primarily in terms of whether the California anti-spam statute created a "substantive" statutory right and concluded that legislative recognition of that right supported concreteness. *Id.* at *3. The decision did not undertake the element-by-element historical comparison later clarified and required by *Popa*.

PLAINTIFF'S RESPONSE TO THE COURT'S
FEBRUARY 13, 2026 MINUTE ORDER
(Case No. 2:25-cv-01141-TSZ) - 7

MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

in a TCPA case that wasting the recipient's time is a concrete injury that satisfies Article III).

The post-*TransUnion* decisions Defendant cites are likewise inapposite because each involved allegations akin to intrusion upon seclusion or invasion of privacy that are materially different from the allegations here. *See Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1117 (9th Cir. 2022); *Brinton v. Vivint, Inc.*, 2024 WL 3688589, at *3–4 (W.D. Wash. 2024). These decisions simply confirm that standing exists where plaintiffs allege a specific harm that is comparable to intrusion upon seclusion or invasion of privacy. Indeed, as *Popa* acknowledges, some privacy and telemarketing claims resemble historically actionable harms where plaintiffs allege intrusive interference with private affairs or disclosure of sensitive personal information, which are comparable to specific privacy torts recognized at common law. Here, however, Defendant has failed to show that Plaintiff has alleged an intrusion, interruption, or detrimental reliance comparable to the harms recognized in those cases.

**4.      Recent decisions applying *TransUnion* confirm that Defendant has failed to establish Article III standing.**

Recent decisions applying *TransUnion* illustrate that allegations materially similar to those pleaded here do not establish Article III standing.

In *Montes v. Catalyst Brands LLC*, the court considered a CEMA claim based on allegedly misleading commercial email subject lines and concluded that the plaintiff failed to allege a concrete injury sufficient for Article III standing. 2025 WL 3485827 (E.D. Wash. 2025) (dismissing plaintiff's complaint for lack of subject-matter jurisdiction). The court emphasized that a CEMA violation alone does not satisfy the injury requirement and that a plaintiff must allege a harm that "actually exist[s]," not merely the receipt of emails alleged to violate the statute. *Id.* at *2. The court explicitly declined to follow *Harbers*, explaining that receipt of solicited marketing emails containing allegedly misleading subject lines does not resemble the privacy invasion or nuisance harms associated with unsolicited text message or phone communications. *Id.* at *3.

PLAINTIFF'S RESPONSE TO THE COURT'S
FEBRUARY 13, 2026 MINUTE ORDER
(Case No. 2:25-cv-01141-TSZ) - 8

Defendant attempts to distinguish *Montes* by asserting that the court found no standing because the plaintiff failed to allege that the emails were "unwanted," whereas Plaintiff here alleges she does not wish to receive misleading emails. Dkt. 49 at 5–6. That reading misapprehends *Montes* as well as Plaintiff's allegations in this action. Like Plaintiff here, the plaintiff in *Montes* did not object to receiving the defendant's marketing emails generally. Rather, the court expressly noted that the plaintiff "welcomed Defendants' marketing emails and even wishes to continue to receive Defendants' emails." *Id.* at *3. Plaintiff alleges the same: she "does not want to receive emails with false and misleading subject lines from FullBeauty, though she would like to continue receiving truthful information from FullBeauty regarding its products." FAC ¶ 70.

More importantly, *Montes* did not turn on whether the emails were subjectively "wanted" or "unwanted." The court instead concluded that the plaintiff failed to allege a concrete injury because the complaint asserted only a statutory violation without reliance, economic harm, or another traditionally cognizable injury. *Id.* at *2–3. The absence of a concrete injury—not the plaintiff's willingness to receive marketing communications—was dispositive. As in *Montes*, Plaintiff alleges exposure to allegedly misleading subject lines while continuing to welcome truthful marketing communications.

Recent decisions from this District also demonstrate the correct approach to the concreteness inquiry. In *Hill v. Spirit Halloween Superstores LLC*, this Court granted a motion for remand where the plaintiff alleged only statutory violations of Washington's Equal Pay and Opportunities Act ("EPOA"); the court explained that Article III standing is "the threshold issue" and that federal jurisdiction is absent where a plaintiff fails to allege a concrete and particularized harm. 2024 WL 5117460 (W.D. Wash. 2024) (Zilly, J.). Describing the holdings in similar cases, the Court observed that one held that "wasted time and an inability to evaluate the pay offered by the defendant or compare the pay to the wages associated with other job opportunities do not constitute concrete injuries." *Id.* at *1 (citing *Perry v. Boeing Co.*, 2024

PLAINTIFF'S RESPONSE TO THE COURT'S
FEBRUARY 13, 2026 MINUTE ORDER
(Case No. 2:25-cv-01141-TSZ) - 9

WL 4867023 (W.D. Wash. Nov. 22, 2024)). As in *Montes* and *Hill*, the allegations in the Complaint do not establish a concrete injury sufficient to invoke Article III jurisdiction.

Defendant attempts to distinguish *Hill* and similar decisions finding a lack of standing in EPOA cases by explaining that the plaintiffs in those cases "were not exposed to the injury EPOA was intended to guard against." Dkt. 49 at 4 n.1. That is not relevant to assessing the concreteness of an injury post-*TransUnion*. *See Popa*, 153 F.4th at 792 (stating that this type of "analysis reverts to a pre-*TransUnion* (even pre-*Spokeo*) approach that favors a legislative body's views in the aggregate over a plaintiff's individual circumstances"). Defendant also attempts to distinguish the harm of "wasted time" found insufficient in *Hill* from a CEMA plaintiff's generalized interest in not "spending time addressing spam messages they have actually received and which are occupying space in their inbox." Dkt. 49 at 4 n.1. Notably, however, Defendant points to no allegations in the Complaint that make similar claims.

**B.     CAFA's amount-in-controversy requirement is satisfied based on the evidence submitted by Defendant.**

Should the Court conclude that Plaintiff's allegations confer Article III standing, CAFA's $5 million amount-in-controversy requirement is necessarily satisfied based on Defendant's evidence. More than 15,000 class members received at least one of the emails at issue, which meets the requirement based on either a per-recipient or per-violation calculation. *See* Decl. of Milt Hallas ¶ 3. Even under the more restrictive per-recipient reading of the law, 15,000 recipients each receiving a single violative email (assessed at $500 per recipient) would yield $7.5 million in statutory damages.

Plaintiff, however, notes that the proper analysis is a per-violation calculation. Because damages for CEMA violations are awarded under the CPA, case law governing CPA damages governs. And numerous cases establish that CPA damages are awarded on a per-violation basis, not a per-consumer basis.

Specifically, a per-plaintiff limitation on statutory damages would be inconsistent with

PLAINTIFF'S RESPONSE TO THE COURT'S
FEBRUARY 13, 2026 MINUTE ORDER
(Case No. 2:25-cv-01141-TSZ) - 10

MᴄNᴀᴜʟ Eʙᴇʟ ᴘʟʟᴄ
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

how courts have interpreted related provisions of the CPA. The Washington Supreme Court has held that civil penalties under the CPA are assessed on a per-violation basis, not per consumer, "declin[ing] to follow the one-violation-per-consumer rule." *State v. Ralph Williams' N.W. Chrysler Plymouth, Inc.*, 87 Wn.2d 298, 316 (1976). Washington courts have applied this rule consistently, assessing a separate penalty for each deceptive act rather than each consumer deceived. For a deceptive mailer that violated the CPA in *State v. LA Investors, LLC*, the Court of Appeals affirmed the application of a penalty for "each of the 256,998 mailers sent to Washington consumers." 2 Wn. App. 2d 524, 546 (2018). The court put it simply: "The [CPA] does not limit the possible number of violations to the number of aggrieved consumers." *Id.* at 545. In *State v. Comcast Cable Communications Management, LLC*, the Court of Appeals overturned the lower court for basing civil penalties "on a per-consumer, rather than a per-account, basis." 16 Wn. App. 2d 664, 689 (2021). The trial court found that Comcast violated the CPA by enrolling Washington consumers in Service Protection Plan accounts without first obtaining affirmative consent for each account. *Id.* at 690; *see also Larsen v. PTT, LLC*, 2025 WL 1654351, at *5–9 (W.D. Wash. June 11, 2025) (concluding, after a thorough analysis, that the CPA's enhanced damages cap applies on a per-transaction basis and noting that "[o]ther Washington courts have rejected attempts to limit penalties on a per-consumer basis, even when tied to numerous and repeated violations of the statute"). The courts explained their reasoning for awarding penalties on a per-violation basis by looking to the broader purpose of the CPA. *See, e.g.*, *Ralph Williams*, 87 Wn.2d at 316 n.11; *Comcast*, 16 Wn. App. 2d at 689 ("[T]he [Consumer Protection Act] does not limit the possible number of violations to the number of aggrieved consumers."); *State v. Living Essentials, LLC*, 8 Wn. App. 2d 1, 35–36 (2019).

Under either a per-recipient or per-violation calculation, the evidence before the Court shows that the amount in controversy exceeds CAFA's jurisdictional minimum.

PLAINTIFF'S RESPONSE TO THE COURT'S
FEBRUARY 13, 2026 MINUTE ORDER
(Case No. 2:25-cv-01141-TSZ) - 11

McNaul Ebel PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

## III.   CONCLUSION

Because Defendant has failed to demonstrate that Article III standing exists, this case should be remanded to King County Superior Court.[2] If the Court concludes otherwise, the Court should further conclude that CAFA's amount-in-controversy requirement is satisfied.

DATED this 5th day of March, 2026.

*I certify that this memorandum contains 3,817 words, in compliance with the Local Civil Rules.*

MCNAUL EBEL PLLC

By: /s/ Kaleigh N. Boyd
Kaleigh N. Boyd, WSBA #52684
600 University Street, Suite 2700
Seattle, WA 98101
Tel: 206-467-1816
Fax: 206-624-5128
Email: kboyd@mcnaul.com

Edwin J. Kilpela, Jr. (admitted *pro hac vice*)
WADE KILPELA SLADE LLP
6425 Living Place, Suite 200
Pittsburgh, PA 15206
Tel: 412-314-0515
Email: ek@waykayslay.com

Evan E. North (admitted *pro hac vice*)
NORTH LAW PLLC
1900 Market Street, Suite 800
Philadelphia, PA 19103
Tel: 202-921-1651
Email: evan@northlawpllc.com

***Attorneys for Plaintiff and the Proposed Class***

---

[2] The Court should deny Defendant's request in the alternative to stay this action pending resolution of the appeal in *Montes v. Catalyst Brands LLC*, 2025 WL 3485827 (E.D. Wash. 2025). Dkt. 49 at 10 n.5. Article III jurisdiction is an antecedent question that must be resolved before a federal court exercises discretionary authority over a case. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998). **As the proponent of federal jurisdiction, Defendant has the burden of establishing Article III standing *now*, based on *this* plaintiff's specific allegations, when jurisdiction in *this* Court is in question**. If that burden is not met, remand is mandatory. 28 U.S.C. § 1447(c).

PLAINTIFF'S RESPONSE TO THE COURT'S
FEBRUARY 13, 2026 MINUTE ORDER
(Case No. 2:25-cv-01141-TSZ) - 12